KATHRYN WINNETT, FORMERLY KNOWN AS KATHRYN WEGELE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27864-89.          Filed June 13, 1991.

*Gregory W. MacNabb,* for the petitioner.
*Mary P. Kimmel,* for the respondent.

JACOBS, *Judge:* Respondent determined a deficiency of $16,592.30 in petitioner's Federal income tax for 1985. The issues for decision are: (1) Whether respondent's assessment of tax for 1985 is time barred, which, in turn, depends upon whether a return mailed to a wrong service center is deemed filed when received by the wrong service center; and if the assessment is not time barred, then (2) whether petitioner qualifies for innocent spouse relief under section 6013(e).[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner was a resident of Chandler, Arizona, when she filed her petition.

Petitioner and her former husband, Jerry Wegele, filed a joint Federal income tax return for 1985. They separated in January 1986, and were divorced in 1987.

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

In 1985, petitioner worked part time as a teacher at a preschool; her husband was employed by Atwood Oceanics, International, S.A. (Atwood) as a tool pusher and manager of an oil rig off the coast of Dubai. His work schedule consisted of rotational work and rest periods of 28 days each. At the end of each 28-day work period, he returned to Chandler, Arizona.

The Wegeles maintained several joint bank accounts, including a joint checking account which petitioner used for her support.

The Wegeles filed a joint 1985 tax return which was prepared by H&R Block. On the return, they reported Mr. Wegele's earnings of $64,032 from Atwood and reduced their income by a corresponding amount claiming that such wages were excluded under section 911 as foreign earned income. A Form 2555 (which is used to report foreign earned income) was attached to their 1985 return.

The Wegeles mailed their 1985 return to the Ogden Service Center on July 30, 1986. (They had previously obtained an automatic extension of time to file their 1985 return on or before August 15, 1986.) The Ogden Service Center stamped the return as "received" on August 1, 1986.

The instructions for Form 2555 (under the heading "Where to File") stated that taxpayers should attach Form 2555 to their Form 1040 and file both forms with the Internal Revenue Service Center in Philadelphia, Pennsylvania. The Philadelphia Service Center was the only service center equipped to review returns of taxpayers claiming an exclusion for foreign earned income.

The Ogden Service Center discovered the Wegeles' Form 2555 during its code and edit process; whereupon, the return was removed from further processing.[2] On August 18, 1986, the Ogden Service Center mailed a form letter to the Wegeles stating that their "inquiry" was being referred to the Internal Revenue Service Center in Philadelphia. (The

---

[2]According to the Ogden Service Center's procedures, an automatic sorter opened the envelopes in which returns were mailed and the returns were extracted. Depending upon the volume of returns received, the sorting and extracting process took from 1 to 4 days. After extraction, the returns went to batching, where they were batched with other returns for processing. Generally, it took between 1 and 4 days to complete the batching process. The returns were then forwarded to code and edit where schedules were checked and prepared for data transcribing. Depending upon the number of returns received at the service center, this latter process took between 2 and 7 days to complete.

form letter was drafted as a general response to a taxpayer's inquiry and failed to mention the reason for forwarding the return to the Philadelphia Service Center.) Rather than immediately forwarding the Wegeles' return to Philadelphia, the Ogden Service Center placed it in a suspense file[3] until October 20, 1986, at which time the service center stamped the form letter "No Reply." Some time thereafter, the Ogden Service Center forwarded the return to Philadelphia. Had the Ogden Service Center followed its usual procedures, the earliest date the Philadelphia Service Center could have received the Wegeles' 1985 return would have been August 19, 1986.

The Wegeles' 1985 return showed a $10,016 refund due. Petitioner received the entire refund in connection with her divorce from Jerry Wegele.

Form 4340, Certificate of Assessments and Payments, indicated that the Wegeles' 1985 return was filed on September 1, 1986. The September 1, 1986, date does not correspond with any event or action taken with respect to the 1985 return. Hence, the Certificate of Assessments and Payments is not accurate.

On August 17, 1989, respondent mailed a notice of deficiency to the Wegeles disallowing the claimed foreign earned income exclusion for 1985. Petitioner concedes that Jerry Wegele's 1985 wages from Atwood are not exempt from taxation as foreign earned income.

## OPINION

Petitioner contends that the Wegeles' 1985 return was filed on August 1, 1986, the date the Ogden Service Center received the return. Thus, because the notice of deficiency for 1985 was mailed on August 17, 1989 (which is more than 3 years from the date petitioner claims the return was filed), she posits that assessment of the tax is time barred under section 6501(a). Respondent claims that the Wegeles'

---

[3]If the Ogden Service Center found a return with a Form 2555 attached during the extracting process, it would forward the return to the Philadelphia Service Center without notifying the taxpayer. If the service center discovered a return with a Form 2555 attached during the code and edit process, it would send the return to typing where a letter to the taxpayer would be generated. In the latter situation, the return would be sent to a suspense unit, which would associate a copy of the letter with the return. Thereafter, both the letter and return would be transferred to the Philadelphia Service Center.

1985 return was filed no earlier than August 19, 1986, the earliest date the Philadelphia Service Center could have received the return from the Ogden Service Center had respondent followed his usual procedures.

Petitioner further contends that she is entitled to innocent spouse relief under section 6013(e).

## Burden of Proof

In her petition, petitioner alleged that respondent failed to mail the notice of deficiency to petitioner prior to the expiration of the period of limitations on assessment and collection of the tax set forth in section 6501(a). Respondent filed a general denial to petitioner's allegation. Subsequently, in an amendment to his answer, respondent alleged that the limitations period had not expired because the Wegeles' 1985 return was filed on September 1, 1986, the date the Philadelphia Service Center allegedly received it.

The parties agree that the bar of the statute of limitations is an affirmative defense and that the party pleading it bears the ultimate burden of proof. Rule 142(a); *Coleman v. Commissioner*, 94 T.C. 82, 89 (1990). Petitioner nonetheless argues that respondent bears the burden of proving that the Wegeles' 1985 tax return was filed late because respondent did not include in his pleading a specific explanation of his denial of the statute of limitations defense until he filed his amended answer shortly before trial.

In essence, petitioner argues that the facts alleged in respondent's amendment to answer constitute a "new matter" under Rule 142(a). The disposition of this case, however, does not turn on the burden of proof. Regardless of where the burden of proof lies, the holdings we reach herein would not change.

## Statute of Limitations

Section 6501(a) generally provides that an income tax must be assessed within 3 years after the return is filed. Although section 6501 does not define the word "filed," the general and longstanding rule is that for purposes of determining the commencement of the limitations period on

assessments, a return is considered filed when delivered.[4] *Emmons v. Commissioner*, 92 T.C. 342, 346 (1989), affd. 898 F.2d 50 (5th Cir. 1990).

In this case, the issue is whether a return is deemed "filed" upon delivery to the wrong internal revenue office. Section 6091(b)(1)(A) generally provides that returns for individuals shall be made to the Secretary:

(i) in the internal revenue district in which is located the legal residence or principal place of business of the person making the return, or

(ii) at a service center serving the internal revenue district referred to in clause (i), as the Secretary may by regulations designate.

Section 6091(b)(1)(B)(iii), however, expressly gives the Secretary the authority to designate where individuals claiming a foreign earned income exclusion under section 911 must file their returns. The Secretary promulgated regulations at section 1.6091-3, Income Tax Regs., which state, in part, that:

The following income tax returns shall be filed with the Director of International Operations, Internal Revenue Service, Washington, D.C. 20225, or the district director, or the director of the service center, depending on the appropriate officer designated on the return form or in the instructions issued with respect to such form:

\* \* \* \* \* \* \*

(h) Income tax returns of persons who claim the benefits of section 911 (relating to earned income from sources without the United States).

The instructions to Form 2555 provided that taxpayers should attach Form 2555 to Form 1040 and send both to the Internal Revenue Service Center, Philadelphia, Pennsylvania, 19255. Thus, a return with Form 2555 attached should be filed with the Philadelphia Service Center.

The Supreme Court in *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930), stated that "Under the established general rule a statute of limitation runs against the United States only when they assent and upon the conditions prescribed." For a taxpayer to secure the benefit of the limitation, there must be "meticulous compliance by the

---

[4]The "timely mailing" rule of sec. 7502(a)(1) is an exception to this general rule. Sec. 7502(a) applies only if the document was deposited in the U.S. mail on or before its due date in a properly addressed envelope and actually delivered by U.S. mail to the agency, officer, or office where the document was required to be filed.

taxpayer with all named conditions." *Lucas v. Pilliod Lumber Co., supra.*

Courts have held on several occasions that filing a return with the wrong Internal Revenue Service representative does not constitute "filing" for purposes of commencing the limitations period for assessing income taxes. See *O'Bryan Bros. v. Commissioner,* 127 F.2d 645 (6th Cir. 1942), affg. 42 B.T.A. 18 (1940) (mailing of a return to an Internal Revenue Service agent does not constitute the filing of a return); *W.H. Hill Co. v. Commissioner,* 64 F.2d 506 (6th Cir. 1933), affg. 23 B.T.A. 605 (1931) (hand delivery of a return to an Internal Revenue Service agent does not constitute the filing of a return). See also *Congelliere v. Commissioner,* T.C. Memo. 1990-265, 59 T.C.M. 709, 720, 59 P-H Memo T.C. par. 90,265 at 1227 (1990) (a return incorrectly filed with a service center rather than the District Director "should be disregarded for the purposes of determining when the 60-day period for issuing the statutory notice of deficiency for the termination year begins to run.")

The Philadelphia Service Center was the service center designated to receive returns in which taxpayers claimed the foreign earned income exclusion; it was the only service center equipped to review such returns. In our opinion, a taxpayer cannot shorten the statutorily mandated period given to respondent to review a filed return for tax assessment purposes by mailing the return to a wrong service center. To "meticulously comply" with the conditions for commencing the running of the statute of limitations, a taxpayer must file his return where section 6091 or the regulations promulgated thereunder require the return to be filed. Thus, we hold that for purposes of determining the commencement of the limitations period (when the timely mailing rule does not apply), a return is not deemed "filed" until it is received by the revenue office designated to receive such return.

In this case, the exact date that the Philadelphia Service Center received the return is unknown. Pursuant to respondent's August 18, 1986, form letter, the return should have been sent to the Philadelphia Service Center on or shortly

after that date.[5] Thus, had the Ogden Service Center followed its usual procedures, the earliest date the Philadelphia Service Center could have received the return would have been August 19, 1986. In actuality, the Ogden Service Center did not forward the return to Philadelphia until October 20, 1986, or some time thereafter. Regardless of whether August 19, 1986, or any later date is considered the filing date, the notice of deficiency mailed on August 17, 1989, was timely.

Petitioner argues that the policy of the Ogden and Philadelphia Service Centers to treat the return as filed on the first date any service center receives the return is determinative of when the return was filed. We disagree.

In this case, the date the Wegeles' 1985 return is deemed filed is a question of law. Even though employees of the Ogden and Philadelphia Service Centers may have considered the return filed on the first date it was received by a service center (albeit the wrong service center), respondent is not bound by such error. See *Adler v. Commissioner*, 330 F.2d 91, 93 (9th Cir. 1964), affg. a Memorandum Opinion of this Court; *Zimmerman v. Commissioner*, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). The authoritative sources of Federal tax law are the statutes, the regulations, and judicial decisions. *Zimmerman v. Commissioner, supra.*

Lastly, petitioner contends for the first time on brief that respondent is estopped from assessing a deficiency because the service centers treated the return as timely filed. Parties must set forth the defense of estoppel in their pleadings. Rule 39. Petitioner did not raise the estoppel issue in her pleadings; therefore, we will not consider it. *Sundstrand Corp. & Subsidiaries v. Commissioner*, 96 T.C. 226 (1991).

Since we hold that the assessment of tax is not time barred, we now turn to whether petitioner qualifies for innocent spouse relief under section 6013(e).

---

[5]Petitioner did not argue on brief that even if respondent had forwarded the return to the Philadelphia Service Center on Aug. 18, 1986, respondent unduly delayed by waiting 18 days from the date the Ogden Service Center received the return to do so. Even had petitioner made such an argument, we believe 18 days was a reasonable period of time for the Ogden Service Center to discover an improperly filed return and mail it to the proper service center. See *Yusko v. Commissioner*, 89 T.C. 806, 809 (1987) (Fresno Service Center did not unreasonably delay in forwarding an improperly filed return to the Philadelphia Service Center 24 days after it received the return).

## Innocent Spouse Relief

If a husband and wife file a joint tax return, the tax is computed on their aggregate income, and they are jointly and severally liable for such tax. Sec. 6013(d)(3). However, one of the parties to a joint return may be relieved of his or her tax liability for certain items attributable to the other spouse if all the requirements of section 6013(e)(1) are met. Those requirements are:

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * *

The burden is on petitioner to prove that she is entitled to innocent spouse relief. *Bokum v. Commissioner*, 94 T.C. 126, 138 (1990). In the instant case, the parties agree that a joint return was filed, that there was a substantial understatement of tax, and that if there are grossly erroneous items, such items are items of Jerry Wegele.

### Grossly Erroneous Items

Petitioner must show that the substantial understatement of tax was attributable to a grossly erroneous item. Sec. 6013(e)(1)(B). A grossly erroneous item is defined as "(A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law." Sec. 6013(e)(2).

Here, we must determine whether the mischaracterization of Jerry Wegele's wages as foreign earned income as defined in section 911 constitutes a grossly erroneous item within the purview of section 6013(e). In *Bokum v. Commissioner, supra* at 141, we held that the mischaracterization of ordinary income as long-term capital gain was not an omission of gross income because the taxpayers reported the entire dividend portion of the distribution on their

return. Thus, in that case, even though the taxpayers misallocated the distribution and reported too much as long-term capital gain, respondent's recharacterization did not add an item or an amount that had been omitted from gross income. As a result, the mischaracterization was not an "income" item under section 6013(e)(2)(A). *Bokum v. Commissioner, supra.* See also *Sivils v. Commissioner,* 86 T.C. 79 (1986) (taxpayer was not entitled to relief under section 6013(e) when the return reported all gross income, but failed to characterize the commission income as income from self-employment subject to tax under sections 1401 et seq.).

The Wegeles reported all of their income for 1985. Thus, the understatement is not attributable to an item omitted from gross income.

The Wegeles did not falsely claim a deduction, credit, or basis. They claimed that Jerry Wegele's wages were exempt from Federal taxation under section 911(a). By correcting the Wegeles' mischaracterization of income, respondent did not disallow a deduction or credit. Cf. *Bokum v. Commissioner, supra* (effect of respondent's recharacterizing ordinary income as long-term capital gain was to partially disallow the taxpayers' deduction for capital gains). Accordingly, the mischaracterization of income is not a claim of a deduction, credit, or basis under section 6013(e)(2)(B).

Since the mischaracterization of Jerry Wegele's wages as foreign earned income is not an item of omitted income or a claim of a deduction, credit, or basis, it is not a grossly erroneous item under section 6013(e)(2).[6] Such conclusion is sufficient to deny petitioner entitlement to innocent spouse relief; however, for the sake of completeness, we will discuss whether petitioner satisfied the requirements of section 6013(e)(1)(C) and (D).

---

[6]As initially enacted, sec. 6013(e) applied only to omissions from income, and not to disallowed or fraudulent deductions. Congress revised sec. 6013(e) in 1984; the House report noted that the then-applicable rules were "not sufficiently broad to encompass many cases where the innocent spouse deserves relief." H. Rept. 98-432 (Part II), at 1502 (1984). Even as liberalized, however, the definition of grossly erroneous item does not include all possible errors made on returns. The plain meaning of the statute does not support a finding that a mischaracterization of income as exempt under sec. 911 is a grossly erroneous item under sec. 6013(e)(2).

*Knowledge of the Substantial Understatement*

To qualify as an innocent spouse, a spouse must establish that "in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement." Sec. 6013(e)(1)(C). We accept petitioner's claim that she did not have actual knowledge that there was a substantial understatement of tax on the return.

For a spouse to show that he or she had no reason to know of the substantial understatement, we have held that such spouse must establish that he or she was unaware of the circumstances that gave rise to the error on the tax return. *Bokum v. Commissioner, supra* at 146. The U.S. Court of Appeals for the Ninth Circuit, the circuit where an appeal of this case would lie, has held that knowledge of the underlying transaction, by itself, does not preclude relief under section 6013(e). *Price v. Commissioner,* 887 F.2d 959, 963 n.9 (9th Cir. 1989), revg. a Bench Opinion of this Court. However, the Ninth Circuit has held that the more a spouse knows about a transaction, the more likely it is that such spouse will have reason to know that income was omitted or a deduction was not valid. *Price v. Commissioner, supra.* As the Ninth Circuit stated:

> If a spouse knows virtually all of the facts pertaining to the transaction which underlies the substantial understatement, her defense in essence is premised solely on ignorance of law. In such a scenario, regardless of whether the spouse possesses knowledge of the tax consequences of the item at issue, she is considered as a matter of law to have reason to know of the substantial understatement and thereby is effectively precluded from establishing to the contrary. [*Price v. Commissioner, supra* at 964; citations omitted.]

In the instant case, at the time petitioner signed the return, she knew that her husband received income from abroad. She also knew that he was present in the United States in excess of 35 full days in 1985. Thus, she knew all of the facts pertaining to the transaction which gave rise to the substantial understatement. Because petitioner's defense rests solely on her lack of knowledge of the tax consequences associated with her husband's foreign based

wages, she is considered as a matter of law to have reason to know of the substantial understatement. See *Price v. Commissioner, supra* at 964. Petitioner therefore has failed to show that she had no reason to know of the substantial understatement.

## Equities in Holding Spouse Liable

In determining whether it is inequitable to hold a spouse liable, we consider all the facts and circumstances. Sec. 6013(e)(1)(D); sec. 1.6013-5(b), Income Tax Regs. One fact to be considered is whether the spouse received a significant benefit as a direct or indirect result of the erroneous item. Sec. 1.6013-5(b), Income Tax Regs.[7]

Section 1.6013-5(b), Income Tax Regs., provides that "Evidence of direct or indirect benefit may consist of transfers of property, including transfers which may be received several years after the year in which the omitted item of income should have been included in gross income." In the instant case, petitioner received the entire tax refund as part of her divorce property settlement. Thus, she significantly benefited from the mischaracterization of Jerry Wegele's wages as excludable foreign earned income. Taking into account all the facts and circumstances, we conclude that it is not inequitable to hold petitioner liable for the 1985 income tax deficiency.

Having failed to satisfy all the requirements of section 6013(e)(1), petitioner is not entitled to innocent spouse relief.

*Decision will be entered for the respondent.*

---

[7]Although sec. 6013(e) was amended after sec. 1.6013-5(b), Income Tax Regs., was promulgated, whether a spouse significantly benefited from the erroneous item is still a factor to be considered in determining whether it is inequitable to hold a spouse liable. *Estate of Krock v. Commissioner,* 93 T.C. 672, 678 (1989).