ESTATE OF TRAVIS L. SANDERS, DECEASED, THOMAS S. HOGAN, JR., PERSONAL REPRESENTATIVE, PETITIONER, AND THE GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, INTERVENOR *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4614–11.　　　Filed January 29, 2015.

D was a U.S. citizen who built his own company in the United States to both manufacture and distribute surge suppression devices. In 2002 D signed an employment agreement to work for M, an LP organized in the U.S. Virgin Islands (USVI), as a professional consultant. The employment agreement required D to become a resident of the USVI. Pursuant to I.R.C. sec. 932(c)(2), D filed Forms 1040, U.S. Individual Income Tax Return, with the USVI Bureau of Internal Revenue (VIBIR) for tax years 2002, 2003, and 2004. More than three years after D filed Forms 1040 with the VIBIR, R mailed D a notice of deficiency determining that D was not a bona fide resident of the USVI for tax years 2002–04 and treating D as a nonfiler for U.S. tax purposes. P contends that D filed proper tax returns for tax years 2002–04.

R contends that D was not a bona fide resident of the USVI and the period of limitations has not expired because D did not file U.S. tax returns. *Held*: The proper test for determining USVI residency for the years at issue is the "facts and circumstances" test of *Vento v. Dir. of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 467 (3d Cir. 2013). *Held*, *further*, Forms 1040 that D filed with the VIBIR met his Federal tax filing obligations. *Held*, *further*, the period of limitations commenced when D filed his tax returns with the VIBIR and expired before R mailed the notice of deficiency.

*William M. Sharp*, *Matthew A. Cullen*, *David S. Barnhill*, and *Vernon Jean Owens*, for petitioner.

*Vincent F. Frazer*, *Tamika Ancher*, *Barry J. Hart*, *Peter N. Heibert*, and *Christopher M. Bruno*, for intervenor.

*Christopher A. Pavilonis* and *Anne M. Craig*, for respondent.

KERRIGAN, *Judge*: Respondent determined the following deficiencies and additions to tax with respect to tax years 2002, 2003, and 2004:

*Additions to tax*

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------|-----------------|-----------------|-----------|
| 2002 | $485,805 | $98,821 | $109,801 | $1,667 |
| 2003 | 106,758 | 24,021 | 26,690 | 2,754 |
| 2004 | 54,648 | 12,296 | 13,662 | 1,566 |

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue. We round all monetary amounts to the nearest dollar.

The threshold issue for consideration is whether the section 6501 period of limitations on assessment and collection expired before the date respondent mailed the notice of deficiency, and we consider whether Travis L. Sanders (decedent) was a bona fide resident of the USVI for tax years 2002, 2003, and 2004. If we conclude the period of limitations on assessment and collection has not expired, we must consider whether (1) the transactions among decedent, his companies, and Madison Associates, L.P. (Madison), lacked economic substance; (2) decedent was entitled to the gross income exclusion under section 932(c)(4) for tax years 2002, 2003, and 2004; and (3) additions to tax under sections 6651(a)(1) and (2) and 6654 apply.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Decedent, a U.S. citizen, lived in Florida when he filed the petition. On November 13, 2012, decedent died.

*Decedent's Companies*

Decedent built his own company to both manufacture and distribute surge suppression devices. Decedent owned 100% of the stock of Surge Suppression, Inc., formerly known as ITD of Destin, Inc., during the 2002, 2003, and 2004 tax years. Surge Suppression, Inc., was in Florida. Decedent owned 100% of the stock of Surge Technology, Inc., which was in Florida during tax years 2002, 2003, and 2004. Effective December 30, 2003, Surge Suppression, Inc., and Surge Technology, Inc., merged into ITD of Destin, Inc., which was renamed Surge Suppression, Inc.

In 1997 Thomas Hogan began to represent decedent on legal matters and continued this representation until decedent's death. Mr. Hogan and decedent had both a business and a social relationship.

*Madison*

In 2001 Mr. Hogan partnered with Rick Roberts, Victor Taglia, and Alan Teegardin to start Madison, a designated services business in the USVI. Mr. Teegardin was licensed to practice law in the USVI. Mr. Roberts was a certified public accountant (C.P.A.) in Florida. This group hired USVI attorney Vince Fuller to organize Madison and serve as the general partner. They were interested in benefiting from the USVI economic development program (EDP), which had recently expanded to include consulting businesses. The Economic Development Commission (EDC) oversaw EDP.

In order to encourage development in the USVI, Congress allowed the USVI to reduce certain taxes. Section 934(b)(1) provides that the USVI may reduce taxes on "income derived from sources within the Virgin Islands or income effectively connected with the conduct of a trade or business within the Virgin Islands." The USVI government enacted several incentives, including the EDP program. Participating companies of the EDP receive substantial tax benefits, including a 90% exemption on local taxes.

Mr. Fuller organized Madison as a limited partnership in the USVI in November 2001. In the spring of 2002 Madison engaged Marjorie Roberts to advise them with respect to the EDP residency requirement and other EDP compliance matters. Ms. Roberts is a USVI-based attorney focusing on tax and corporate law. She has operated her own law firm since 1999, and her experience included working for the U.S. Department of the Treasury as a technical adviser for the VIBIR. In May 2002 Madison received approval of its application for EDP benefits.

Madison prepared a pamphlet entitled "Obtaining a Limited Partnership in Madison Associates, L.P." It provided background information on Madison, how to become a limited partner, and residence requirements for the USVI. Madison considers an application to become a limited partner when the applicant is a resident or will become a resident of the USVI. The pamphlet explains that the limited partners are employees who provide consulting services. Three Madison limited partners who were unable to comply with the rules of the EDP were encouraged to leave the partnership. The EDC has not disciplined Madison regarding the EDP.

Madison provides scientific, electronic, investment, economic, and management consulting services to businesses in the United States. The Madison pamphlet explains that the limited partners of Madison receive a 90% tax credit on the distributions from Madison because they are all residents of the USVI.

*Decedent's Involvement With Madison*

In September 2002 Mr. Hogan recommended that decedent become a limited partner of Madison. Mr. Hogan made this recommendation because he knew that decedent liked the USVI and was interested in changing the operational structure of Surge Suppressions, Inc.

On September 25, 2002, decedent signed an employment agreement with Madison. Decedent was employed as a professional consultant commencing on that date. The contract stated that the "[e]mployee agrees to devote his full-time talent and abilities to Employer for so long as this Agreement is in effect." The contract required decedent to maintain records "including, but not limited to Affidavits of

residency or other certification for filing with the Economic Development Commission."

On September 25, 2002, decedent also signed a Supplemental Agreement to Agreement of Limited Partnership of Madison Associates which would make him a limited partner of Madison. The Supplemental Agreement states the following:

> Before acceptance as a Limited Partner, each Limited Partner will be required to provide the partnership an opinion letter from a legal or accounting firm in the form and content acceptable to the General Partners in his sole and absolute discretion that the Limited Partner will qualify as a resident of the USVI. * * *
>
> Each Limited Partner agrees to cooperate with the Partnership and the General Partner in providing or maintaining whatever documentation the Partnership or General Partner may require in his sole and absolute discretion necessary to prove the continued residency in the USVI of such Limited Partner.

Madison's first office was at a property called Wind Song in St. Thomas, USVI, and it moved to the American Yacht Harbor office in St. Thomas, USVI, in December 2002. Decedent had his own desk in Madison's office at the America Yacht Harbor. Madison filed Schedules K–1, Partner's Share of Income, Deductions, Credits, etc., for tax years 2002–04. Each of these Schedules K–1 listed decedent as partner of Madison.

In the spring of 2002 Madison purchased a one-twelfth deeded interest in a Ritz-Carlton condominium. Decedent stayed in this unit or another unit that Ritz-Carlton made available during 2002 and the beginning of 2003. Decedent was able to store his personal items there.

*Other USVI Contacts*

STT Equipment, LLC (STT), was a USVI limited liability company during 2003 and 2004. The Travis L. Sanders Revocable Inter Vivos Trust and Hogan Family, LLC, were equal owners of STT. During July 2003 STT financed the purchase of a vessel called the *Nazdar*. On February 11, 2003, decedent signed a document titled "Lease Agreement" among STT and himself, ITD of Destin, Inc., and the Hogan Law Firm, LLC. Beginning in the spring of 2003 the *Nazdar* was moored in the American Yacht Harbor in St. Thomas, USVI. Decedent entered into license agreements with the American

Yacht Harbor which pertained to the dockage of the *Nazdar* for the period between April 1, 2003, and April 1, 2004, and the period between April 1 and December 31, 2004.

Decedent resided on the *Nazdar* during 2003 and 2004. The *Nazdar* was two stories and had a full kitchen, a smaller kitchen, and five bedrooms including a master suite. Decedent kept personal effects on the *Nazdar*.

During 2002 and 2003 decedent maintained a checking account at Banco Popular de Puerto Rico in St. Thomas, USVI. The address for the checking account was a USVI address. Decedent reported his residence as St. Thomas, USVI, on his license and certificate of marriage. Decedent was married in the USVI on June 18, 2003. During 2004 decedent had bank accounts with UBS Financial Services, Inc., in the USVI and First Bank in St. Thomas in the USVI. Decedent's checks for his First Bank account showed a USVI address as his address.

*Tax Returns*

On February 19, 2003, Scott C. Blair, C.P.A., whose practice is in the USVI, sent decedent a letter providing a tax organizer for 2002. This letter was sent to a USVI address and included a Form 8822, Change of Address, for decedent to fill out if he had moved to the USVI during 2002.

The VIBIR directs individual and entity taxpayers to file their income tax returns using the same forms that the Internal Revenue Service (IRS) uses in administering the Code. Decedent filed Forms 1040, U.S. Individual Income Tax Return, with the VIBIR for tax years 2002–04. Decedent filed his 2002, 2003, and 2004 tax returns on October 15, 2003, October 15, 2004, and December 15, 2005, respectively. On each Form 1040 decedent reported a home address in the USVI and claimed an "EDC Credit". Decedent attached a statement entitled "Federal Supplemental Information" to each Form 1040 indicating that he was entitled to income tax benefits afforded under the EDP through his interest in Madison. He further indicated that the EDP credit entitled him to "reduce his income tax liability by 90% of the income tax attributable to the net income derived by * * * [Madison]".

For tax years 2002–04 Madison filed Forms 1065, U.S. Return of Partnership Income, with the VIBIR. Attached to each Form 1065 was a Schedule K–1 listing decedent as a partner of Madison.

Decedent's Forms 1040 were prepared by certified public accountants in the USVI. The VIBIR provided the IRS with a partial copy of decedent's 2002 tax return consisting of the first two pages of his Form 1040 for tax year 2002. This partial Form 1040 was marked as received by the IRS in Philadelphia, Pennsylvania, on December 29, 2003.

Decedent did not file Forms 1040 with the IRS for tax years 2002–04. On April 7, 2009, the IRS prepared substitutes for returns for decedent for tax years 2002–04.

Decedent made estimated tax payments of $20,000 and $25,000 on June 15 and September 15, 2002, respectively, to the U.S. Treasury for tax year 2002. Decedent did not make any estimated tax payments to the U.S. Treasury for tax years 2003 and 2004.

Decedent made an estimated tax payment of $74,250 to the VIBIR for tax year 2003. For tax year 2004 decedent made an estimated tax payment of $53,363 to the VIBIR.

On November 30, 2010, respondent issued decedent a notice of deficiency with respect to tax years 2002–04. In the notice of deficiency respondent determined that (1) decedent was not a bona fide resident of the USVI for tax years 2002–04; (2) all transactions among decedent, his companies, and Madison lacked economic purpose and substance; (3) decedent was not entitled to the gross income exclusion under section 932(c)(4) for tax years 2002–04 with the IRS; (4) decedent was required to file a Form 1040 for each of tax years 2002–04 with the IRS; and (5) decedent was liable for additions to tax under sections 6651(a)(1) and (2) and 6654.

Attached to the notice of deficiency was a Form 886–A, Explanation of Items, which states the following:

It is determined that you were not a bona fide resident of the United States Virgin Islands ("USVI") for the taxable years 2002, 2003, and 2004. During each of those taxable years, you participated in a tax avoidance arrangement similar to that described in IRS Notice 2004–45, *Meritless Filing Position Based on Sections 932(c)(4) and 934(b)*, which involved improperly claiming to be a bona fide resident of the USVI and, through use of sham arrangements, superficially recasting income from sources within the United States as income from sources within in the

USVI * * * in order to inappropriately and invalidly claim a 90% territorial income tax credit under the USVI Economic Development Program.[1]

Decedent filed timely his petition with this Court. Petitioner contends that the statute of limitations under section 6501(a) applies to bar respondent from assessing the deficiencies and additions to tax determined in the notice of deficiency.

On January 22, 2014, the Government of the USVI filed a motion to intervene. On February 25, 2014, we granted the Government of the USVI's motion.

OPINION

I. *The USVI*

The USVI is an unincorporated territory of the United States acquired in 1916. 48 U.S.C. sec. 1541(a) (2006). The USVI is not part of one of the 50 States or the District of Columbia, and it is generally not part of the United States for tax purposes. *See* sec. 7701(a)(9).

In 1921 Congress passed the Naval Service Appropriations Act of 1922, ch. 44, sec. 1, 42 Stat. at 123 (1921) (codified as amended at 48 U.S.C. sec. 1397 (2006)), which created a tax system for the USVI. This tax system, usually referred to as the mirror code, mirrors the provisions of the Code except that "Virgin Islands" is substituted for "United States" throughout. *Id.* Originally, corporations and U.S. citizens residing in the USVI who received both U.S. and USVI source income were required to file returns with, and pay

---

[1] Notice 2004–45, 2004–2 C.B. 33, states that the "highly questionable" positions described in this notice may be promoted to taxpayers in a variety of forms. However, they have frequently been promoted in the following manner:

Promoters typically approach a taxpayer (Taxpayer) living and working in the United States and advise Taxpayer to (i) purport to become a USVI resident by establishing certain contacts with the USVI, (ii) purport to terminate his or her existing employment relationship with his or her employer (Employer) and (iii) purport to become a partner of a Virgin Islands limited liability partnership ("V.I.LLP") that is treated as a partnership for U.S. tax purposes. V.I.LLP then purports to enter into a contract with Employer to provide Employer with substantially the same services that were provided by Taxpayer prior to the creation of this arrangement. * * *

taxes to, both jurisdictions. *Appleton v. Commissioner*, 140 T.C. 273, 278 (2013).

In 1954 Congress modified the administration of the mirror code and established the "inhabitant rule" by enacting the Revised Organic Act of the Virgin Islands (ROA), ch. 558, sec. 28, 68 Stat. at 508 (1954). ROA sec. 28(a) provided that corporations and individuals whose permanent residence was in the USVI satisfied their U.S. income tax obligations by "paying their tax on income derived from all sources both within and outside the Virgin Islands in the treasury of the Virgin Islands". Pursuant to the ROA any taxes levied by Congress on the inhabitants of the USVI would be covered into (i.e., paid to) the USVI Treasury. *Id.*

In 1986 Congress repealed the inhabitant rule as part of Tax Reform Act of 1986 (TRA), Pub. L. No. 99–514, sec. 1274(a), 100 Stat. at 2596. As part of the TRA Congress enacted a new section 932 which coordinates U.S. and USVI income taxes for individuals who are bona fide residents of the USVI under section 932. *Appleton v. Commissioner*, 140 T.C. at 279.

A. *Section 932*

Section 932 provides rules that govern the coordination of the U.S. income tax system and the USVI income tax system. Specifically, section 932 provides the filing and payment requirements for "United States residents" (U.S. residents) and "Virgin Islands residents" (USVI residents). With respect to U.S. residents section 932(a) provides as follows:

> SEC. 932(a). TREATMENT OF UNITED STATES RESIDENTS.—
>     (1) APPLICATION OF SUBSECTION.—This subsection shall apply to an individual for the taxable year if—
>         (A) such individual—
>             (i) is a citizen or resident of the United States (other than a bona fide resident of the Virgin Islands at the close of the taxable year),[2] and

---

[2] Sec. 932 was amended, effective for tax years ending after October 22, 2004, to replace the phrase "at the close of the taxable year" with the phrase "during the entire taxable year". American Jobs Creation Act of 2004, Pub. L. No. 108–357, sec. 908(c)(2), 118 Stat. at 1656. Thus, the amendment applies for decedent's tax year 2004. *Id.* sec. 908(d)(1), 118 Stat. at 1657.

(ii) has income derived from sources within the Virgin Islands, or effectively connected with the conduct of a trade or business within such possession, for the taxable year, or

(B) such individual files a joint return for the taxable year with an individual described in subparagraph (A).

(2) FILING REQUIREMENT.—Each individual to whom this subsection applies for the taxable year shall file his income tax return for the taxable year with both the United States and the Virgin Islands.

(3) EXTENT OF INCOME TAX LIABILITY.—In the case of an individual to whom this subsection applies in a taxable year for purposes of so much of this title (other than this section and section 7654) as relates to the taxes imposed by this chapter, the United States shall be treated as including the Virgin Islands.

Section 932(b)(1) provides the payment requirements for U.S. residents. U.S. residents "shall pay the applicable percentage" of the income tax shown due on their tax returns to the USVI. The applicable percentage is the percentage which the amount of a U.S. resident's USVI adjusted gross income bears to his or her total adjusted gross income. Sec. 932(b)(2). U.S. residents may claim credits on their U.S. tax returns equal to the amounts of the tax paid to the USVI. Sec. 932(b)(3).

With respect to USVI residents section 932(c) provides:

SEC. 932(c). TREATMENT OF VIRGIN ISLANDS RESIDENTS.—

(1) APPLICATION OF SUBSECTION.—This subsection shall apply to an individual for the taxable year if—

(A) such individual is a bona fide resident of the Virgin Islands at the close of the taxable year, or

(B) such individual files a joint return for the taxable year with an individual described in subparagraph (A).

(2) FILING REQUIREMENT.—Each individual to whom this subsection applies for the taxable year shall file an income tax return for the taxable year with the Virgin Islands.

(3) EXTENT OF INCOME TAX LIABILITY.—In the case of an individual to whom this subsection applies in a taxable year for purposes of so much of this title (other than this section and section 7654) as relates to the taxes imposed by this chapter, the Virgin Islands shall be treated as including the United States.

(4) RESIDENTS OF THE VIRGIN ISLANDS.—In the case of an individual—

(A) who is a bona fide resident of the Virgin Islands at the close of the taxable year,[3]

(B) who, on his return of income tax to the Virgin Islands, reports income from all sources and identifies the source of each item shown on such return, and

---

[3] *See supra* note 2. This change does not affect the outcome of this case.

(C) who fully pays his tax liability referred to in section 934(a) to the Virgin Islands with respect to such income,

for purposes of calculating income tax liability to the United States, gross income shall not include any amount included in gross income on such return, and allocable deductions and credits shall not be taken into account.[4]

Section 932 established two distinct filing regimes: one for bona fide residents of the USVI and one for those who are not bona fide residents. Bona fide residents file their tax returns with the VIBIR. Those who are not bona fide residents must each file two income tax returns: one with the IRS, and one with the VIBIR. The bona fide resident's single tax return filed with the VIBIR pursuant to section 932(c) satisfies both the taxpayer's territorial and Federal tax obligations. Sec. 932(c)(4); *see Huff v. Commissioner*, 743 F.3d 790 (11th Cir. 2014) (allowing intervention by the USVI), *rev'g and remanding* 138 T.C. 258, 262 (2012).

B. *The Tax Implementation Agreement*

In order to ensure the "fair implementation" of section 932, the United States and the USVI entered into an agreement "for the exchange of information and mutual assistance with respect to taxes in order to prevent the evasion or avoidance of United States or Virgin Islands taxes". Tax Implementation Agreement Between the United States of America and the Virgin Islands (TIA), Feb. 24, 1987, 1989–1 C.B. 347, 347–348. The TIA applies to (1) all taxes imposed by the Code, (2) all taxes imposed by the mirror code, and (3) all local income taxes imposed by the USVI as authorized by the TRA. *See id.* art. 2, 1989–1 C.B. at 348. TIA article 4 governs the exchange of information between the two governments. Clause 1 provides that the competent authorities of the United States and the USVI shall exchange information to administer and enforce their respective tax laws. *See id.* art. 4(1), 1989–1 C.B. at 348.

TIA article 4(2)(b) provides that the USVI shall routinely supply to the United States information with respect to audit changes that disclose information of interest to the U.S.

---

[4] Sec. 932(c) is not included in the mirror code and is not an element of the USVI territorial tax system. *See* S. Rept. No. 100–445, at 324 (1988), 1988 U.S.C.C.A.N. 4515, 4825–4826.

Government, including, among other matters, (1) information about the ownership interests of all corporations subject to USVI tax having non-USVI-source income and which receive a rebate, subsidy, or deduction of USVI taxes, as well as (2) information about any individual subject to USVI tax who has non-USVI-source income and who claims for the first time to be a USVI resident. In addition, TIA article 4(2)(b) provides that the USVI shall supply to the United States "copies of reports of individual, partnership, corporate, and employment audit changes that disclose information relevant to the United States." *Id.* art. 4(2)(b), 1989–1 C.B. at 348–349. The TIA provides that the VIBIR will permit the IRS to examine USVI tax returns. *Id.* app. A, sec. 3.1, 1989–1 C.B. at 352.

II. *Federal Tax Filing Requirements*

U.S. citizens are subject to Federal reporting requirements and taxation on their worldwide income as set forth in the Code. *See, e.g.*, *Cook v. Tait*, 265 U.S. 47, 56 (1924); *Huff v. Commissioner*, 135 T.C. 222, 230 (2010). Several sections of the Code govern an individual's filing requirements. Section 6012(a)(1)(A) provides that every individual with gross income for the taxable year which equals or exceeds the exemption amount, with certain exceptions not relevant here, is required to file a U.S. income tax return. Thus, a choreographed interplay between sections 6012(a) and 932(c), together with mirror code section 6012(a), governs the tax filing responsibilities of individuals having income equal to or in excess of the exemption amount. *See Appleton v. Commissioner*, 140 T.C. at 281.

Although an individual having gross income for the taxable year which equals or exceeds the exemption amount must file a Federal tax return, section 932(c)(2) directs bona fide residents of the USVI to file income tax returns with the USVI (through the VIBIR), and section 932(c)(4) (flush language) exempts both U.S. source income and USVI source income from U.S. taxation if all of the requirements of section 932(c)(4) are met. *Appleton v. Commissioner*, 140 T.C. at 281. But if any requirement of section 932(c)(4) is not satisfied, then the individual falls back into the Federal tax reporting and payment system, because his or her income would no

longer be excluded for purposes of calculating his or her U.S. tax liability. *Appleton v. Commissioner*, 140 T.C. at 281.

Section 7654(e) provides that the Secretary shall prescribe such regulations as may be necessary to carry out the provisions of section 932, including prescribing the information which individuals to whom section 932 applies must furnish to the Secretary. The Secretary did not, however, promulgate regulations for the years in issue. We turn to other sections of the Code, as well as regulations and instructions published by the IRS, for guidance as to the place where decedent was required to file his tax returns for the years in issue. *See Appleton v. Commissioner*, 140 T.C. at 282.

Section 6091 generally governs the place where a U.S. taxpayer is required to file a tax return. Section 6091(b)(1)(B)(ii) (flush language) provides that "citizens of the United States whose principal place of abode * * * is outside the United States" shall file their tax returns "at such place as the Secretary may by regulations designate." Pursuant to the authority granted by the statute, the Secretary promulgated section 1.6091–1(a), Income Tax Regs., which provides that, in general, whenever an income tax return is required to be filed and the place for filing the return is not provided by the Code, the tax return shall be filed at the place prescribed by the regulations.

Section 1.6091–3, Income Tax Regs., requires that certain tax returns be filed with (1) the Director of Internal Operations, Internal Revenue Service, Washington, D.C. 20225, or (2) the District Director, or (3) the director of the service center, depending on the appropriate officer designated on the return form or in the instructions issued with respect to the form.[5] These tax returns include the income tax return of (1) an individual citizen of the United States whose principal place of abode for the period with respect to which the return is filed is outside the United States, and (2) an individual citizen of a possession of the United States (whether or not a citizen of the United States) who has no legal residence or principal place of business in any internal revenue district of the United States. Sec. 1.6091–3(b) and (c), Income

---

[5] This regulation was revised in 2004 and the revisions were effective September 16, 2004. The position of District Director no longer existed after 1998. This change and these revisions do not affect this case.

Tax Regs. A taxpayer's principal place of abode will be considered to be outside the United States if his or her legal residence is outside the United States or if his or her tax return bears a foreign address. *Id.* para. (b).

The VIBIR directs individual and entity taxpayers to file their income tax returns using the same forms that the IRS uses in administering the Code. The instructions to Form 1040 for 2002, 2003, and 2004 provide specific filing instructions. Under the heading "Where do you file", for each year the instructions state that "All APO, FPO addresses, American Samoa, nonpermanent residents of Guam or the Virgin Islands, Puerto Rico (or if excluding income under Internal Revenue Code section 933), dual-status aliens, a foreign country: U.S. citizens and those filing Form 2555, 2555–EZ or 4563" shall use the address of "Internal Revenue Service Center Philadelphia, PA 19255–0215 USA".

In a footnote the instructions state that "permanent residents of the Virgin Islands should use: V.I. Bureau of Internal Revenue, 9601 Estate Thomas, Charlotte Amalie, St. Thomas, VI 00802" when filing their Form 1040 individual income tax returns. [6]

During the years in issue the IRS issued Publ'n 570, Tax Guide for Individuals With Income From U.S. Possessions (rev. February 2003), which states that "[i]f you are a bona fide resident of the * * * [USVI] you must file your tax return on Form 1040 with the Government of the Virgin Islands and pay the entire tax due to the Virgin Islands. You do not have to file with the IRS for any tax year in which you are a bona fide resident of the Virgin Islands". [7] This publication provides specific filing instructions for the different U.S. possessions. The instructions for the USVI do not

---

[6] It appears that when the inhabitant rule was replaced by sec. 932, the IRS failed to update the instructions to Form 1040 and continued to use the terms "permanent resident of the Virgin Islands" and "nonpermanent resident of the Virgin Islands" despite their obsolescence. *Appleton v. Commissioner*, 140 T.C. 273, 284 n.17 (2013).

[7] Publication 570 for tax year 2004 states that "[i]f you are a bona fide resident of the Virgin Islands during the entire tax year, you must file your tax return on Form 1040 with the Government of the Virgin Islands and pay the entire tax due to the Virgin Islands". It further states that "[y]ou do not have to file with the IRS for any tax year in which you are a bona fide resident of the Virgin Islands". Publication 570 was revised for tax year 2004 to reflect the changes of the AJCA.

include qualifications for a bona fide residency whereas the instructions for America Samoa provide specific factors for determining bona fide residency. These qualifications are included on Form 4563, Exclusion of Income for Bona Fide Residents of America Samoa. For 2002 Publication 570 did provide the following example regarding bona fide USVI residents:

> Mr. and Mrs. Maple left the United States on June 15, 2002, and arrived in the Virgin Islands on the same day. They qualified as bona fide residents of the Virgin Islands on the last day of their tax year, December 31, 2002.
>
> Mr. and Mrs. Maple file Form 1040 with the Government of the Virgin Islands and attach a Form 1040 INFO. The Maples report their worldwide income and pay the entire tax for the year to the Virgin Islands. Even though they lived in the United States part of the year, their income tax obligations for that year are completely satisfied by filing their return with, and paying their tax to, the Virgin Islands Bureau of Internal Revenue.

The same example appeared in Publication 570 for 2003.

We also note that the Senate Finance Committee report published with the TRA states that "[a]n individual qualifying as a bona fide Virgin Islands resident as of the last day of the taxable year will pay tax to the Virgin Islands under the mirror system on his or her worldwide income. He or she will have no final tax liability for such year to the United States, as long as he or she reports all income from all sources and identifies the source of each item of income on the return filed with the Virgin Islands." S. Rept. No. 99–313, at 482 (1986), 1986–3 C.B. (Vol. 3) 1, 482.

Notice 2004–45, 2004–2 C.B. 34, states that "[t]he determination of whether an individual is a *bona fide* resident of the USVI turns on the facts and circumstances and, specifically, on an individual's intentions with respect to the length and nature of his or her stay in the USVI."

III. *Section 6501(a) Period of Limitations*

The regulations and instructions regarding income tax return filings are significant because the period of limitations on assessment commences only when a tax return has been properly filed. *See Appleton v. Commissioner*, 140 T.C. at 284. The general rule for the period of limitations is that "the amount of any tax imposed by this title shall be assessed

within 3 years after the return was filed". Sec. 6501(a). The term "return" for this purpose is defined as "the return required to be filed by the taxpayer". *Id.* Section 6501 provides a list of exceptions, but none of the exceptions to the three-year period specifically addresses a challenge to a claim of bona fide residency.

Petitioner contends that the three-year period of limitations for each year in issue commenced on the date that decedent filed his tax return for the year with the VIBIR. Respondent contends that the period of limitations has not commenced for any of the years in issue because decedent did not properly file his income tax returns for those years. Thus, we must determine whether decedent's Forms 1040 filed with the VIBIR were the returns required to be filed, and if so, whether they were properly filed.

A. *Required Returns*

Section 1.6011–1(a), Income Tax Regs., provides that the tax return required to be filed must include "the information required by the applicable regulations or forms." Following the Supreme Court's opinions in *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934), and *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930), we used a four-part test in *Beard v. Commissioner*, 82 T.C. 766, 777 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986), in determining whether a document qualifies as a valid return for purposes of section 6501(a): (1) the document must contain sufficient data to calculate tax liability; (2) the document must purport to be a return; (3) there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and (4) the taxpayer must have executed the document under penalties of perjury. *See Appleton v. Commissioner*, 140 T.C. at 285.

Petitioner contends that decedent met the requirements of the *Beard* test because of the manner in which he filed his tax returns for tax years 2002–04. Respondent contends that decedent did not file Federal income tax returns for tax years 2002–04. We agree with petitioner.

Decedent hired a C.P.A. located in the USVI to prepare the Forms 1040 that he filed with the VIBIR for tax years 2002–04. These returns contained more than sufficient data to calculate decedent's tax liabilities. Both the Commissioner and

the VIBIR required the use of this form for income tax filing. The forms purport to be returns. Not only did decedent hire a C.P.A. to prepare his returns; he also consulted with an established tax attorney in the USVI. Decedent's tax returns for tax years 2002–04 were an honest and reasonable attempt to satisfy the requirements of the law. The tax returns filed were consistent with the requirement of section 932(c)(4) and the Commissioner's instructions for USVI taxpayers. Decedent signed each tax return under penalties of perjury.

Decedent's tax returns for tax years 2002–04 meet the requirements of the *Beard* test, and therefore the returns filed were the required returns for purposes of section 6501(a).

### B. *Proper Filing*

The Supreme Court has noted that "[u]nder the established general rule a statute of limitations runs against the United States only when they assent and upon the conditions prescribed." *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930). The Supreme Court has stated that to secure the benefit of the limitation, there must be "meticulous compliance by the taxpayer with all named conditions in order to secure the benefit of the limitation". *Id.* We have stated that to meticulously comply, a "taxpayer must file his return where section 6091 or the regulations promulgated thereunder require the return to be filed." *Winnett v. Commissioner*, 96 T.C. 802, 808 (1991).

This Court, as well as other courts, has held that filing a return with the wrong IRS representative does not constitute "filing" for purposes of commencing the limitations period. *Appleton v. Commissioner*, 140 T.C. at 286; *Winnett v. Commissioner*, 96 T.C. at 808–809; *see Allnutt v. Commissioner*, 523 F.3d 406, 413 n.5 (4th Cir. 2008), *aff'g* T.C. Memo. 2002–311.

Section 1.6091–3(b), Income Tax Regs., requires a taxpayer who is a U.S. citizen but whose principal place of abode is outside the United States to file his or her return as designated on the return forms or in the instructions issued with respect to those forms. Section 1.6091–3(c), Income Tax Regs., requires a taxpayer who is a citizen of a possession of the United States and has no legal residence or principal

place of business in the United States to file his or her tax return as designated on the return forms or in the instructions issued with respect to those forms.

Petitioner contends that decedent's tax returns for tax years 2002–04 were properly filed with the VIBIR because decedent was a bona fide resident of the USVI. Respondent contends that decedent was required to file Federal returns for tax years 2002–04 in Philadelphia per the instructions on the Form 1040 for nonpermanent USVI residents. Respondent contends that decedent was not a bona fide resident of the USVI and should have complied with section 932(a)(2), which requires tax returns to be filed in both the United States and the USVI, rather than section 932(c)(2), which requires a single filing in the USVI.

We held that the returns filed with the VIBIR met the taxpayer's Federal tax filing obligations. In *Appleton v. Commissioner*, 140 T.C. at 283 n.16, the parties stipulated that during the years at issue the taxpayer was both "a bona fide resident of the Virgin Islands" within the meaning of section 932 and a "permanent resident of the Virgin Islands" as that term is used in the instructions to Form 1040. We noted that "[t]he instructions to the Form 1040 are explicit: The form is to be filed with the VIBIR." *Id.* at 287. We rejected the Commissioner's argument that when the Form 1040 instructions are read together with Publication 570 the taxpayer fell into the category of a taxpayer living abroad and should have filed a protective return with the Internal Revenue Service Center in Philadelphia, Pennsylvania. *See id.* at 288. We concluded that a meticulous taxpayer researching his or her filing obligations would have found the instructions and these documents. A review of the instructions would not lead a taxpayer who was a permanent resident of the USVI to believe that he or she was required to make an additional filing. In *Appleton*, we rejected the Commissioner's argument because there was no IRS document requiring such a filing to be made. *Id.*

In *Appleton*, the parties conceded that the taxpayer was a bona fide resident of the USVI. In the instant case respondent disputes that decedent was a bona fide resident and contends that he should have filed returns with the IRS. In order to determine whether decedent's tax returns for 2002–04 were properly filed as petitioner contends, we need

to address whether decedent was a bona fide resident of the USVI for the purposes of section 932(c)(2). If we determine that he was, his Forms 1040 for tax years 2002–04 would be properly filed because they were filed with the VIBIR as the proper place of filing directed by the instructions. *See* sec. 1.6091–3(b) and (c), Income Tax Regs.

C. *Bona Fide Residency*

The single filing requirement of section 932(c)(2) applies only if a taxpayer "is a bona fide resident of the Virgin Islands". Sec. 932(c)(1)(A). The term "bona fide resident of the Virgin Islands" was not defined by the Code until 2004. [8] The Secretary did not promulgate final regulations for determining whether a taxpayer is a bona fide resident of the USVI until 2006. [9] As a result, a taxpayer attempting to determine whether he or she was a bona fide resident of the USVI for tax years 2002–03 would not find the answer in either the Code or the regulations.

Publication 570 for tax years 2002 and 2003 provides information for filing returns for individuals with income from U.S. possessions. These publications provide specific instructions for different U.S. possessions or territories. There is a possession exclusion for a bona fide resident of American Samoa, and the publication includes factors that may be considered in determining whether a taxpayer is a bona fide resident of American Samoa. For the USVI there

---

[8] Sec. 937(a) does provide a test for determining whether a taxpayer is a "bona fide resident" of the Virgin Islands by creating a two-part residency test. The first part of the test requires an individual to be in the possession for at least 183 days during the tax year, and this requirement is effective for tax years beginning after October 22, 2004, and does not affect this case. AJCA sec. 908(d). The second part of the test requires that the taxpayer not have a closer connection to the United States or a foreign country during the year, and the effective date is for taxable years ending after the date of enactment, October 22, 2004. The second part of the test applies for decedent's 2004 tax year. However, the final regulations for sec. 937(a) allow taxpayers to apply the prior-law test for determining residency for 2004. *See* 71 Fed. Reg. 5000 (Jan. 31, 2006). Petitioner did not address the final regulation in his arguments.

[9] On April 11, 2005, the Secretary published sec. 1.937–1T, Temporary Income Tax Regs., 70 Fed. Reg. 18940 (Apr. 11, 2005), which provided rules to implement sec. 937(a) concerning bona fide residents in U.S. possessions, including the USVI. On January 31, 2006, the Secretary published final regulations under sec. 937(a). Sec. 1.937–1, Income Tax Regs.

are no qualifications for a bona fide resident. The publication states: "You do not have to file with the IRS for any tax year in which you are a bona fide resident of the Virgin Islands on the last day of the year, provided you report and pay tax on your income from all sources to the Virgin Islands and identify the source(s) of the income on the return."[10] No guidance was provided to help a taxpayer determine whether he or she was a bona fide resident.

### D. *Factors To Determine Bona Fide Residency*

The meaning of residency varies according to context. *Martinez v. Bynum*, 461 U.S. 321, 330 (1983). For tax purposes residency has fewer requirements than domicile. *Sochurek v. Commissioner*, 300 F.2d 34, 38 (7th Cir. 1962), *rev'g and remanding* 36 T.C. 131 (1961). In *Sochurek*, the Court of Appeals for the Seventh Circuit looked at 11 factors to determine whether a taxpayer's claimed residency is bona fide. *Id.* The 11 factors are: (1) intention of the taxpayer; (2) establishment of a home in the foreign country for an indefinite period; (3) participation in activities; (4) physical presence in the foreign country; (5) nature, extent, and reasons for absences from his temporary foreign home; (6) assumption of economic burdens and payment of taxes to the foreign country; (7) status of resident contrasted to transient or sojourner; (8) treatment accorded his income tax status by his employer; (9) marital status and residence of his family; (10) nature and duration of employment; and (11) good faith in making the trip abroad. *See id.* The 11 factors can be grouped into 4 broad categories: intent; physical presence; social, family, and professional relationships; and the taxpayer's own representations. *Vento v. Dir. of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 467 (3d Cir. 2013) (considering the *Sochurek* factors as grouped into these categories for purposes of determining bona fide residency under section 932).

As we noted in *Bergersen v. Commissioner*, T.C. Memo. 1995–424 (applying the *Sochurek* factors to determine bona fide Puerto Rican residency under section 933), *aff'd*, 109 F.3d 56 (1st Cir. 1997), the Court has accepted and applied

---

[10] As previously noted, different wording in Publication 570 for tax year 2004 reflected the change made by the AJCA.

these factors in determining bona fide residency under other sections of the Code involving exclusion from gross income. *See, e.g.*, *Schoneberger v. Commissioner*, 74 T.C. 1016, 1023 (1980); *Dawson v. Commissioner*, 59 T.C. 264, 268 (1972) (determining residency of U.S. citizen in Australia under section 911(a)(1)); *Vazquez v. Commissioner*, T.C. Memo. 1993–368 (determining whether taxpayer was bona fide resident of Puerto Rico). And because the same phrase is used for the same purpose in section 932, we see no reason to deviate from using the *Sochurek* factors as grouped in *Vento* here as well.

In this instant case considering the facts and circumstances and applying the *Sochureck* factors as grouped in *Vento*, we find decedent was a bona fide USVI resident. Decedent had the intent to be a bona fide resident because he intended to remain indefinitely or at least for a substantial period. *See Vento*, 715 F.3d at 470. He had a physical presence in the USVI and was employed by a USVI business and listed as a partner on their Schedules K–1 for tax years 2002–04. He conducted banking in the USVI and had checks with a USVI address. Decedent was married in the USVI and reported his address as the USVI on his marriage license. Decedent identified himself as a resident of the USVI and paid USVI taxes. *Id.* at 470–477. Therefore, decedent was a bona fide resident of the USVI for tax years 2002–04 and he properly filed tax returns with the VIBIR for those years.

IV. *Conclusion*

On the basis of the foregoing, we conclude that petitioner has proven that the section 6501(a) period of limitations on assessment expired before the date respondent mailed decedent the notice of deficiency. Therefore, we do not need to address determinations in the notice of deficiency.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

> *An appropriate decision will be entered.*