T.C. Memo. 2017-162

UNITED STATES TAX COURT

GREGORY L. ACONE AND JUDITH E. FINN ACONE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7632-15.                    Filed August 22, 2017.

P-H flew airplanes for a South Korean airline company in 2011
and 2012, but he spent only about a third of each year in South Korea
and more than 40% of each year in the United States. P-H returned to
his home in the United States frequently during those years and spent
most of his days off in the United States, where his wife and house
remained. He stayed in South Korea only when work required it, and
stayed in the United States whenever he could. When P-H stayed in
South Korea, he always stayed in the same hotel, provided to him at
no cost by the airline, but stayed in various rooms in that hotel. P-H
retained his U.S. citizenship, voting registration, driver's license,
bank accounts, and church membership. On their tax returns for
2011 and 2012, Ps claimed an exclusion for "foreign earned income"
under I.R.C. sec. 911(a)(1). R disallowed the exclusions and
determined tax deficiencies.

Held: For 2011 and 2012, P-H was not a "qualified individual"
for purposes of the foreign earned income exclusion of I.R.C. sec.
911(a), because his "abode" was "within the United States" for
purposes of I.R.C. sec. 911(d)(3) and because he was not a "bona fide
resident" of South Korea for purposes of I.R.C. sec. 911(d)(1)(A).

[*2]  Stephen P. Flott, for petitioners.

Rachel L. Rollins, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GUSTAFSON, Judge:  Pursuant to section 6212(a),[1] on December 23, 2014, the Internal Revenue Service ("IRS") issued to petitioners, Gregory L. Acone and Judith E. Finn Acone, a notice of deficiency, which determined deficiencies in tax of $33,750 for 2011 and of $31,220 for 2012.[2]  Mr. and Mrs. Acone filed a timely petition under section 6213(a) for redetermination of the deficiencies and penalties.  The issue for decision is whether in 2011 or 2012 Mr. Acone was a "qualified individual" for purposes of the foreign earned income exclusion ("FEIE") of section 911.  We hold that he was not.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

[2]The Commissioner also determined accuracy-related penalties under section 6662(a); but he has conceded the penalties, and therefore we do not discuss them further.

[*3]                          FINDINGS OF FACT

Mr. Acone is a pilot who formerly worked for Northwest Airlines and was stationed at Detroit, Michigan, though he maintained his residence in New Hampshire. In 2006 he was hired as a B-747 airplane pilot by Korean Air Lines ("KAL") through a private U.S. agency, Global Airline Pilots, LLC, and he worked for KAL from November 26, 2006, until December 16, 2013, i.e., for seven years. He took the job for financial reasons--in particular, to help pay his children's college expenses. During that time, Mr. Acone was stationed at[3] Incheon International Airport in Seoul, South Korea.

Mr. Acone's arrangements with KAL

Mr. Acone's flight schedule was set by KAL, and his flights either originated or terminated at Incheon. KAL owned the Hyatt Regency Incheon, and Mr. Acone stayed at that hotel free of charge when he stayed in Seoul. He did not stay in the same room from one visit to another but rather checked into an available room (whatever room that might be) when he arrived at the hotel. Under the terms of Mr. Acone's employment agreement, he received nine days off per month, in addition to his vacation days. Mr. Acone could spend those days in any

---

[3]The phrase "stationed at" is in Mr. Acone's contract with KAL and in the parties' stipulation. It is unexplained, but we infer that it means that Incheon was the airport that Mr. Acone most frequently flew out of and flew into.

[*4] country he wanted; and if he chose to fly anywhere at the beginning or end of his days off, those flights were free of charge to him.

Whenever Mr. Acone was laid over,[4] he received a per diem payment to cover meals and incidental expenses based on the city in which he was laid over. This included layovers in South Korea.

KAL filed and paid Mr. Acone's South Korean tax returns and taxes on his behalf without consulting him about the content thereof. Mr. Acone's effective income tax rate, in South Korea, appears from the copies of the returns in the record to have been about 4%.

Mr. Acone's leisure activities in South Korea

Mr. Acone testified that, during the time he spent in South Korea, he played tennis and golf and participated in dinner engagements, largely with other airplane pilots (including many Korean pilots, as well as American pilots) or other airline-related staff. Mr. Acone testified that he had the same barber for most of his seven years working out of South Korea; that he had a preferred bar, the Jet-Lagged Lizard, which he and other pilots (both Korean and non-Korean) frequented; and that he helped the owner of that bar move her business a handful of times. Mr.

---

[4]We infer that the term "laid over" in the contract and the stipulation refers to circumstances in which Mr. Acone had to stay in one place between one flight and the next.

**[\*5]** Acone further testified that he took assorted lessons from individuals as well as KAL to learn various phrases in Korean as well as other things about South Korea.

Mr. Acone's retained connections to the U.S.

During 2011 and 2012, Mr. Acone retained his U.S. citizenship. He believes he was a "resident alien" under South Korean law.[5] During 2011 and 2012 (as before and after), Mr. Acone was married to Mrs. Acone. She lived in a house in New Hampshire that she owned jointly with Mr. Acone--the same house in which Mr. Acone lived before and after his employment at KAL. Mrs. Acone worked as a schoolteacher at a nearby school. Mr. and Mrs. Acone have three children; and during 2011 and 2012, the Acones' eldest child lived in England; their second-oldest worked in Korea in 2011 and lived in Boston, Massachusetts,

---

[5]Mr. Acone testified that the South Korean Government issued him "a regular identification card that said resident alien". The copy of that card that is in our record is barely legible. It reflects an apparent handwritten enhancement of the printed title "Certificate of Alien Registration", but in fact the card seems not to include the word "resident". Mr. Acone's South Korean tax return, prepared by his employer, is equivocal: It does have a number inserted in the blank for "Resident (Alien) Reg. No."; but elsewhere on the return, "U.S" is inserted as the "State Code" in a block captioned "Non-Resident". Mr. Acone presented no other pertinent documentation, and the parties did not make any showing of South Korean law as to resident or non-resident alien status. We are unable to make any finding as to Mr. Acone's actual status under South Korean law.

[*6] in 2012; and their youngest child lived in the United States in 2011 and worked in England in 2012.

During the years in issue, Mr. Acone had a U.S. driver's license (apparently issued by New Hampshire) and did not apply for or receive a driver's license in South Korea. He and Mrs. Acone jointly owned two cars which remained in New Hampshire. He remained registered to vote in New Hampshire, and he did not register to vote in South Korea. He retained his U.S. bank accounts, into which KAL deposited his wages. He retained his membership in a church in New Hampshire. When Mr. Acone was in the United States during the years in issue, he helped Mrs. Acone maintain the home, including among other things mowing the grass there. In response to a question by his counsel, Mr. Acone testified:

> Q     You spent significantly more days off duty in the U.S. than in Korea, so during those times you were in the U.S. off duty, I'm assuming you had social engagements and --
>
> A     I had three children that were there, and that was certainly a huge draw for me. My wife was working; she was continuing her career. Yeah, my wife and my kids were perhaps the most important thing for me during that period of time, so I had the opportunity to spend some time with them. At every effort, I did that.

Mr. Acone's time spent in the United States and South Korea

In 2011 Mr. Acone had 46 stays in South Korea, consisting of 91 days on duty and 22 days off duty. That year Mr. Acone had 20 stays in the United States,

[*7] consisting of 26 days on duty and 133 days off duty. In 2012 Mr. Acone had 40 stays in South Korea, consisting of 108 days on duty and 27 days off duty. That year Mr. Acone had 28 stays in the United States, consisting of 58 days on duty and 116 days off duty. Thus, the mean length of Mr. Acone's stays in the United States in 2011 was 7.95 days, while the mean length of his stays in South Korea that year was 2.45 days. The mean length of Mr. Acone's stays in the United States in 2012 was 6.2 days, while the mean length of his stays in South Korea that year was 3.37 days.

In 2011 Mr. Acone's longest span of days in the United States was 20 days; his longest such span in South Korea was 6 days. In 2012 Mr. Acone's longest span of days in the United States was 22 days; his longest such span in South Korea was 20 days (although we note that this 20-day span was not an unbroken stay at the hotel but instead included airplane travel to different places within South Korea).

The foregoing data, stipulated by the parties, are presented in the following chart:

| [*8]   Year | 2011 | | 2012 | |
|---|---|---|---|---|
| Country | U.S. | Korea | U.S. | Korea |
| On-duty | 26 | 91 | 58 | 108 |
| Off-duty | 133 | 22 | 116 | 27 |
| Total days | 159 | 113 | 174 | 135 |
| Mean duration of stay | 7.95 | 2.45 | 6.2 | 3.37 |
| Longest span | 20 | 6 | 22 | 20 |

Tax returns and notice of deficiency

Mr. and Mrs. Acone timely filed Forms 1040, "U.S. Individual Income Tax Return", for both 2011 and 2012. The Acones attached to their returns Forms 2555, "Foreign Earned Income," on which they excluded the maximum allowable foreign earned income exclusion for each year (in both years, Mr. Acone earned more income from KAL than the maximum excludable amount). On December 23, 2014, the IRS mailed Mr. and Mrs. Acone a notice of deficiency, and Mr. and Mrs. Acone timely petitioned this Court on March 19, 2015. At that time they resided in New Hampshire.

OPINION

I.   Burden of proof

In general, the IRS's notice of deficiency is presumed correct, "and the petitioner has the burden of proving it to be wrong". Welch v. Helvering, 290

[*9] U.S. 111, 115 (1933); see also Rule 142(a). Moreover, with respect to one aspect of their case--the "bona fide residence" issue discussed in part IV below--the Acones bear a somewhat higher burden than mere preponderance of the evidence. A taxpayer who qualifies under section 911(d)(1)(A) is not someone who proves that he has been a bona fide resident of a foreign country but rather is someone who "establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country". (Emphasis added.) We have construed this statutory phrase to set a higher-than-ordinary standard of proof--i.e., "strong proof"--of bona fide resident status in a foreign country, Schoneberger v. Commissioner, 74 T.C. 1016, 1024 (1980), which is not as high a standard as "abuse of discretion" but is higher than preponderance of the evidence.

## II. Basic principles of the FEIE

Section 61(a) provides the following broad definition of the term "gross income": "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived". However, section 911(a) provides that a "qualified individual" may elect to exclude from gross income his "foreign earned income". To qualify for the FEIE, the taxpayer must satisfy three conditions, the first two of which, if satisfied, render the taxpayer a "qualified individual", and the third of which relates to the type of income the taxpayer receives.

**[*10]** (1) The taxpayer's "tax home" for the period must be "in a foreign country". Sec. 911(d)(1).

(2) The taxpayer must be (a) a U.S. citizen who is "a bona fide resident of a foreign country * * * for * * * an entire taxable year", sec. 911(d)(1)(A), or (b) a U.S. citizen or resident who is "present in a foreign country or countries during at least 330 full days" of a 12-month period, sec. 911(d)(1)(B). And

(3) the taxpayer must have earned income from personal services rendered in a foreign country. Sec. 911(a)(1), (b)(1)(A), (d)(2).

The Commissioner does not dispute that the compensation Mr. Acone received for flying planes for KAL is "foreign earned income", and consequently we assume that it was. Thus, if Mr. Acone was a "qualified individual" for purposes of section 911, he was entitled to exclude a portion of the compensation he received from KAL from gross income for 2011 and 2012. As described above, the parties' stipulations show that Mr. Acone was <u>not</u> "present in a foreign country or countries during at least 330 full days" of a 12-month period but was instead present in the United States for over 100 days during both years in issue, so the 330-day test of section 911(d)(1)(B) is not satisfied in this case.

In short, the Acones bear the burden of proving, first, that Mr. Acone's "tax home" was in a foreign country; and second, that he was a "bona fide resident" of

[*11] one or more foreign countries for an uninterrupted period including a full taxable year. These two requirements call for overlapping inquiries, but we address each in turn.

III. "Tax home" and "abode"

Under section 911(d)(1) the FEIE is available only to an individual "whose tax home[6] is in a foreign country", and section 911(d)(3) provides that "[a]n individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States."

Consequently, if Mr. Acone's "abode" was in the United States during the years in issue, he does not satisfy the "tax home" requirement of section 911(d)(1). The statute does not further define the term "abode", but this Court, as well as at least one Court of Appeals, has stated:

> "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than

---

[6]Section 911(d)(3) provides that "tax home" means "[an] individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home)." Because we conclude that Mr. Acone's "abode is within the United States", we need not perform an "away from home" analysis under section 162(a)(2).

**[\*12]** vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2).[7]

Bujol v. Commissioner, T.C. Memo. 1987-230, aff'd without published opinion, 842 F.2d 328 (5th Cir. 1988), cited with approval in Lemay v. Commissioner, 837 F.2d 681, 683 (5th Cir. 1988).

One's abode is where he abides. The word connotes stability, not transience. Mr. Acone's housing in Seoul, however, was a hotel--the quintessence of transience. Admittedly, it is not impossible that a person may reside permanently in a hotel, but Mr. Acone did not have even a particular hotel room to call his own. He stayed in whatever room happened to be vacant when he checked in. At his house in New Hampshire he presumably had regular neighbors with whom he formed a community; but at the hotel in Seoul he did not. Rather, he was part of the perpetual stream of hotel "guests" coming and going. The facts about his hotel life in Seoul are not absolutely dispositive of the issue of his "abode", but they are significant. Even though a taxpayer may have some limited ties to a foreign country, if the taxpayer's ties to the United States remain strong, we have held that his or her abode remained in the United States, especially when his or her

---

[7]Thus, a "qualified individual" will have neither his "vocational" home (i.e., his "tax home" under section 911(d)(1) and (3)) nor his "domestic" home (i.e., his "abode" under section 911(d)(3)) in the United States.

[*13] ties to the foreign country were transitory or limited. Harrington v. Commissioner, 93 T.C. 297, 308 (1989). Mr. Acone's ties to South Korea were indeed limited; and his ties to the United States indeed remained strong.

We think the record clearly indicates that, while Mr. Acone spent significant periods in both South Korea and the United States during the years in issue, when he had the choice, he preferred to be in the United States. A comparison of days off-duty in South Korea and the United States during the years in issue shows that, using Mr. Acone's own figures, he spent over 80% of the combined total of such days in the United States. The mean lengths of his visits to each country during the years in issue indicate a similar conclusion: During both years the mean duration of Mr. Acone's stays in the United States was days longer than the mean duration of his stays in South Korea. That is, when Mr. Acone was in America, he tended to stay here longer than he stayed in South Korea when he was there.

Mr. Acone remained registered to vote in New Hampshire; never obtained a driver's license or a car in South Korea (while retaining both in New Hampshire); and spent sufficient time, with sufficient frequency, at the Acones' home in New Hampshire that he was able to continue to be the one who mowed the grass there. In contrast to other airline-pilot FEIE cases, in this case we have the benefit of knowing how much time off Mr. Acone spent in the United States as opposed to

**[\*14]** the country where his employer was based.  Cf. Jones v. Commissioner, 927 F.2d 849 (5th Cir. 1991), rev'g T.C. Memo. 1989-616; Cobb v. Commissioner, T.C. Memo. 1991-376, 62 T.C.M. (CCH) 408 (1991).  While Mr. Acone no doubt made friends in South Korea, it would be difficult to conclude that Mr. Acone's "domestic" home, as opposed to his professional home, was in a country where he largely declined to spend his personal days.

Because Mr. Acone did not pay for housing in South Korea[8] or for plane fare to return to the United States, his choice of how to spend his days off was fairly unencumbered economically.  On days when Mr. Acone could choose what country to be in, he overwhelmingly chose the United States, and we find that his abode was in the United States.  Consequently, under section 911(d)(3), Mr. Acone did not satisfy the "tax home" requirement of the "qualified individual" definition in section 911(d)(1).

---

[8]A finding that Mr. Acone had an "abode" in South Korea would evidently be at odds with congressional intent.  The Court of Appeals noted in Jones v. Commissioner, 927 F.2d 849, 856 (5th Cir. 1991), rev'g T.C. Memo. 1989-616, that the goal of adding the "abode" limitation in section 911(d)(3) was to limit the FEIE to taxpayers who actually incurred the duplicative costs of maintaining distinct U.S. and foreign households.  Mr. Acone's proffered evidence and testimony demonstrate that he did not incur such duplicative costs, because KAL bore them.

**[*15]** IV.    Bona fide residence

A.    Analysis of factors

Whether an individual has taken up bona fide residence in a foreign country depends on the facts and circumstances of the case.  The factors that courts have consulted in analyzing those facts and circumstances include the following:

> (1)    intention of the taxpayer;
> (2)    establishment of his home temporarily in the foreign country for an indefinite period;
> (3)    participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment;
> (4)    physical presence in the foreign country consistent with his employment;
> (5)    nature, extent and reasons for temporary absences from his temporary foreign home;
> (6)    assumption of economic burdens and payment of taxes to the foreign country;
> (7)    status of resident contrasted to that of transient or sojourner;
> (8)    treatment accorded his income tax status by his employer;
> (9)    marital status and residence of his family;
> (10)   nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time;
> (11)   good faith in making his trip abroad; whether for purpose of tax evasion.

Sochurek v. Commissioner, 300 F.2d 34, 38 (7th Cir. 1962), rev'g and remanding, 36 T.C. 131 (1961).  This Court consults those "Sochurek factors" in determining

**[*16]** bona fide resident status, see Estate of Sanders v. Commissioner, 144 T.C. 63, 82-83 (2015); Schoneberger v. Commissioner, 74 T.C. at 1023, and we consider them now.

1.    Intention.  The Court of Appeals in Jones v. Commissioner, 927 F.2d at 854, noted that "intent plays perhaps the most important part in determining the establishment and maintenance of a foreign residence".  We take as sincere Mr. Acone's testimony that he intended to be a bona fide resident of South Korea, but the relevant intention for which we look is, of course, not merely the intention to make plausible a claim of the FEIE.  Rather, we look for objective indicia of an intention to actually establish residence in the foreign country.  In Jones the taxpayer's voluntarily declining to take a payment from the State of Alaska to its residents was a concrete, objective, consequential disclaimer of U.S. residency that made much more credible an alternative claim of foreign residency; but in this case, we do not have any similar concrete, objective fact which persuasively demonstrates Mr. Acone's intent.  Mr. Acone testified very credibly that in 2006 he intended to work for KAL until retirement--an intention that he accomplished; but he did not convince us that, while so employed, he intended to be anything more than a transient in South Korea, so this factor is adverse to Mr. Acone.

[*17] 2.     Establishment of home.  Mr. Acone did not establish a home in South Korea for any period, let alone an indefinite one.  He simply stayed in whatever hotel room was made available to him at the Hyatt Regency Incheon.  His actual home remained in the United States, and he returned to it as frequently as practically possible.  This factor is adverse to Mr. Acone.

3.     Activities and assimilation.  Mr. Acone testified credibly that he attempted to learn Korean to a modest extent and that he made friends with whom he ate and played golf and tennis in South Korea.  To some extent he did assimilate into the local environment, although the extent was not great, given how little of his free time he spent in South Korea.  This factor is moderately favorable to Mr. Acone.

4.     Physical presence.  In 2011 and 2012, Mr. Acone spent a total of 333 days in the United States (where he had no employment) and only 248 days in South Korea (even though that is where he had his job).  Mr. Acone was in South Korea whenever his job as an airplane pilot required him to be there; and he seems to contend that therefore he maintained (in the Sochurek phrase) "physical presence in the foreign country consistent with his employment".  (Emphasis added.)  This contention turns the factor on its head.  A bona fide resident of South Korea will be there when his work allows him to be; i.e., if his work requires him

**[\*18]** to be <u>away</u> from South Korea, then he is away because he <u>must</u> be; but he will at least go back when he can. See <u>Vento v. Dir. of V.I. Bureau of Internal Revenue</u>, 715 F.3d 455, 467 (3d Cir. 2013) ("[E]xtensive absences will negate a finding of bona fide residency, unless those absences are justified by good-faith reasons, such as the travel requirements of the taxpayer's profession"). But Mr. Acone, by contrast, was in South Korea when his work <u>required</u> him to be, and it was in the United States that he stayed when his work <u>allowed</u> him to do so; he was away from South Korea not only when his work required him to be away but whenever his work allowed him to be in the United States, his preferred location; he did not go back to South Korea whenever he could but only when his work required it. The phrase "consistent with his employment" should excuse an employment-related absence from the country of supposed residence; it should not (as it did in Mr. Acone's case) set the limit on his presence in the foreign country. This factor is adverse to Mr. Acone.

     5.     <u>Temporary absences</u>. The "nature, extent and reasons for [Mr. Acone's] temporary absences from" South Korea are adverse to his claim of bona fide resident status. Even disregarding Mr. Acone's time spent on duty in the United States (i.e., 84 days in 2011-12), the "extent" of his <u>off</u>-duty time in the United States was considerable: a total of 249 days in 2011-2012. The "nature"

[*19] of those voluntary absences was personal and familial.  And the "reasons" for them were simply that Mr. Acone preferred being in New Hampshire rather than South Korea and that his important personal connections were in the United States.

6.    Economic burdens and taxes.  Mr. Acone appears to have assumed few economic burdens and paid little tax in South Korea.  He did not have to pay for his lodging, meals, or other major expenses abroad; and as far as the Court can discern from the South Korean tax returns in the record, Mr. Acone's effective income tax rate in South Korea was only about 4%. This factor is adverse to Mr. Acone.

7.    Status of resident vs. transient or sojourner.  We are unable to determine Mr. Acone's legal status under South Korean law.  Mr. Acone's lodging in South Korea (a hotel room, different every stay) and the short duration of his stays there (an average of less than 2-1/2 days long in 2011 and 3-1/2 days long in 2012) constitute transience.  This factor is adverse to Mr. Acone.

8.    Employer's tax treatment.  The tax returns KAL filed for Mr. Acone declared him to be a non-resident of South Korea.  This factor is adverse to Mr. Acone.

[*20] 9.   Marriage and family.  Mr. Acone's wife and children were obviously important to him; his wife remained at their home in New Hampshire; and the time he spent with her in 2011 and 2012 was in New Hampshire.  There is no evidence that Mrs. Acone ever accompanied Mr. Acone to South Korea.  Although one of his children resided in South Korea for one of the years in issue, there is no evidence that Mr. Acone ever crossed paths with that child in South Korea; and otherwise, his children were not in that country.  South Korea simply did not figure into Mr. Acone's family life, except in a negative way as a place where he had to spend time away from his family.  This factor is adverse to Mr. Acone.

10.   Nature and duration of employment.  Mr. Acone's work as a pilot for KAL, flying out of Seoul, was serious full-time employment undertaken for a period of years.  When Mr. Acone took the job with KAL, he was not performing a single flight or discrete group of flights but rather was undertaking to fly as many planes as KAL required under their agreement for as long as that agreement lasted, with an expectation (eventually fulfilled) that the agreement would last until he reached retirement age.  This factor is favorable to Mr. Acone.

11.   Good faith vs. tax evasion.  We see no indication of bad faith, but only good faith, in Mr. Acone's taking his job for KAL and working out of Seoul.  Nothing in the record gives us any reason to believe Mr. Acone took a job outside

[*21] the United States for any tax-related reason, much less for a motive of tax evasion. This factor is favorable to Mr. Acone.

In sum, eight Sochurek factors weigh against finding bona fide residence in South Korea, and three weigh in favor. These three favorable factors do not constitute the "strong proof" of bona fide residence that a taxpayer must provide.

B.      Distinguishing Jones and Cobb

Mr. Acone's principal contention is that the facts of his life in 2011 and 2012 are substantially similar to the facts in Jones v. Commissioner, 927 F.2d 849, and Cobb v. Commissioner, 62 T.C.M. (CCH) 408--two cases in which airline pilots were held to qualify for the FEIE as bona fide residents of foreign countries. We conclude, however, that the facts of this case are different from those of Jones and Cobb.

In Jones v. Commissioner, 927 F.2d at 854, the taxpayer "was apparently only away from his home in Japan when his business required it, or when he was on vacation." Mr. Acone, on the other hand, was away from South Korea and in the United States whenever his work permitted. The taxpayer in Jones returned a dividend check that the State of Alaska issued to him as a resident, fairly clearly establishing his intent (the first and most important Sochurek factor) not to be a resident of Alaska but instead to be a resident of the foreign country, Japan. Id.

**[\*22]** Mr. Acone's intent, as well as the frequency and duration of his trips back to New Hampshire, are plainly distinguishable from Mr. Jones's.

In Cobb v. Commissioner, 62 T.C.M. (CCH) at 412, we held the taxpayer-pilot to be entitled to the FEIE and distinguished our contrary holding in Jones (reversed by the Court of Appeals for the Fifth Circuit) by stressing that "the parties stipulated that Mr. Cobb 'accepted a permanent transfer' to, and had a 'permanent duty assignment' in Japan." We held that the taxpayer in Cobb "did not have an abode in the United States during the years in issue. While he did sometimes visit with his family when laid over in Los Angeles, these occasions were indeed visits, limited by convenience and Mr. Cobb's flight schedule, and in no way converted the Los Angeles area into Mr. Cobb's domicile or place of dwelling." Id. By contrast, Mr. Acone always intended to return to the United States; and in the meantime, his time in the United States with his family far exceeded the mere "visits" of "convenience" described in the Cobb opinion.

Each of these cases turns on its own facts, and the facts here are different from those in Jones and Cobb.

We hold that Mr. Acone's tax home remained in the United States during the years in issue and that Mr. Acone was not a bona fide resident of a foreign country during those years. Consequently, Mr. Acone is not eligible for the FEIE.

**[\*23]** To reflect the foregoing,

<u>An appropriate decision will be entered</u>.