T.C. Memo. 2018-194

UNITED STATES TAX COURT

ANDREW RUSH WENTWORTH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1133-15.                          Filed November 20, 2018.

David F. Grams and Ryan P. Van De Hey, for petitioner.

George W. Bezold and Mark J. Miller, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  Respondent determined deficiencies of $19,336 and $3,854

and section 6662(a) accuracy-related penalties of $3,867.20 and $770.80 in

relation to petitioner's Federal income tax for 2010 and 2011, respectively.[1]  The

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] issues for decision are whether petitioner is: (1) a "qualified individual" who is entitled to exclude portions of the wages he earned in Iraq in 2010 and 2011 under the section 911(a) foreign earned income exclusion (FEIE) provision and (2) liable for accuracy-related penalties under section 6662(a) for 2010 and 2011.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first stipulation of facts, the first supplemental stipulation of facts, and facts drawn from the stipulated exhibits are incorporated herein by this reference. Petitioner resided in Wisconsin when he timely filed his petition.

I.     Petitioner's Background

Petitioner was born and raised in Wisconsin. After graduating from high school in Wisconsin in 2000, petitioner joined the U.S. Marine Corps Reserves. In fall 2000 petitioner began college at the University of Wisconsin-La Crosse studying geography. Petitioner was called to active duty from May 24 to December 31, 2002, and again from June 1, 2004, to May 31, 2005. Petitioner had no foreign service during the first tour of duty but had six months and 16 days of foreign service in Kuwait and Iraq during the second tour. During his time in Iraq

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] petitioner developed a fondness for the Iraqi people he met. Petitioner interacted daily with Iraqi soldiers and organized voluntary humanitarian patrols to provide food and supplies to local Iraqi people. In between the two tours of duty petitioner resumed his studies at the University of Wisconsin-La Crosse and continued in the U.S. Marine Corps Reserves. His Reserves obligation terminated on August 30, 2007.

In April 2005 petitioner and his parents purchased a house in La Crosse, Wisconsin, with the expectation that petitioner would live there while he attended college. Petitioner withdrew from the University of Wisconsin-La Crosse before fall 2005 but lived in the house through January or February 2006. The house was rented from 2006 until it was sold in 2013. Petitioner's parents managed the house while he was in Iraq.

II. Petitioner's Work History

In 2006 petitioner left Wisconsin and returned to Iraq to work in the private sector. From March through September 2006 petitioner worked for Cochise Consultancy, Inc. (Cochise), a private security company under a contract with the Federal Government to provide personal security to U.S. Army Corps of Engineers personnel and others who destroyed munitions stockpiles throughout Iraq. Petitioner provided security services in Iraq. Subsequently, EOD Technology, Inc.

[*4] (EOD), assumed the private security contract, and from September 2006 through April 2007 petitioner worked for EOD performing the same duties he had performed for Cochise. During the period from March 2006 to April 2007 petitioner was permitted, but not mandated, to leave Iraq every four months. He returned to the United States just once for 10 days. While in Iraq during that period, petitioner worked with and befriended an Iraqi interpreter. Petitioner later helped the interpreter apply for a scholarship program to attend a university in the United States. They attempted to keep in touch but had difficulty doing so.

In July 2007 petitioner was selected to train in the U.S. Army Special Forces Qualification Course in the United States. An injury prevented him from completing the course, and he was dropped from the course in February 2009. In 2008 petitioner renewed his Wisconsin driver's license, listing his parents' address in Wales, Wisconsin, as his home address. The driver's license was issued in July 2008 with an expiration date in September 2016.

III.  Petitioner's Employment With Triple Canopy, Inc.

In March 2009 petitioner applied for a security services position with Triple Canopy, Inc. (Triple Canopy). At the time of petitioner's application and during the years in issue Triple Canopy contracted with the U.S. Department of State to provide security for the Department of State's personnel, primarily in Iraq.

[*5] Petitioner entered into an agreement with Triple Canopy to train as a protective security specialist. Triple Canopy then hired petitioner for a term of "not less than 12 months" effective May 15, 2009, and again effective August 9, 2010. Petitioner could not have opted for a longer contract.

The Triple Canopy employment contract reserved the right to deploy petitioner to any location, but the primary location was Iraq. Petitioner applied for the position with the expectation that he would work in Iraq. During the term of the Triple Canopy contract all of petitioner's on-duty time occurred in Iraq. Petitioner's deployment schedule was such that he rotated 105 days on duty, 35 days off duty, and 105 days on duty. The on-duty periods occasionally extended beyond 105 days, but petitioner generally worked the 105/35/105 schedule from May 15, 2009, through April 22, 2011, working 6 days per week for at least 12 hours per day. As a result petitioner spent approximately 75% of his time in Iraq.[2] Petitioner was required to live in the International Zone of Baghdad, Iraq (known as the "Green Zone"). For security purposes petitioner was not permitted to leave the Green Zone freely. Petitioner's living quarters and meals were provided at no

---

[2]Between May 15, 2009, and April 22, 2011, the period during which petitioner claims he was a bona fide resident of Iraq, see infra pp. 8-9, petitioner spent approximately 186 days, 264 days, and 109 days in Iraq in 2009, 2010, and 2011, respectively. He spent the balance of the days either traveling to and from Iraq or in the United States.

[*6] cost to him during his on-duty periods. Petitioner did not purchase any real estate in Iraq.

Petitioner's duties included planning the safest routes for U.S. Department of State personnel, assessing the safety of various locations, and taking part in reconnaissance missions to get an understanding of various sites in Iraq. Petitioner's duties involved consulting and working with Iraqi police. As part of his assignments petitioner visited several sites in Iraq, including the Iraqi National Museum and palace ruins. Petitioner also interacted with the Iraqi people who lived and worked in the Green Zone. He ate lunch with the Iraqi police daily and purchased various goods from Iraqi vendors. Petitioner was a "limited speaker" of Arabic and knew certain "commands" in Arabic including "stop", "put your hands up", "turn around", and "don't shoot". Petitioner had a visa that allowed him to be employed in Iraq but did not apply for Iraqi citizenship. Petitioner generally kept Iraqi currency on his person, but he did not maintain any bank accounts in Iraq. In January 2011 he opened three accounts in an Iraqi bank, but he closed them in March 2011 because on a number of occasions the bank did not have cash when he attempted to withdraw money from his accounts.

The U.S. Department of State and Triple Canopy required petitioner to leave Iraq during his 35-day off-duty periods. Triple Canopy paid petitioner's travel

[*7] costs from Iraq to his home of record and back to Iraq during his off-duty periods. Petitioner listed his home of record as his friend's home in Brentwood, Tennessee. Petitioner chose Brentwood, Tennessee, as his home of record in part because of its proximity to Nashville, Tennessee, where he could enjoy country music during his off-duty periods. He also had started taking online courses at Middle Tennessee State University while in Iraq and wanted to be close to the school during his off-duty periods. Petitioner was permitted to travel to other locations, but he would have been required to pay for the extra cost of air travel. Petitioner returned to the United States during each off-duty period. Had petitioner not been required to leave Iraq, he would have stayed, just as he had when he was not required to leave during his employment with Cochise and EOD. See supra p. 4.

IV. Petitioner's Post-Triple Canopy Education

Petitioner departed from Iraq on April 20, 2011, and voluntarily left his job with Triple Canopy in April or May 2011 because he became concerned with new policies affecting his job. While in Iraq petitioner became interested in pursuing a different career path and decided to obtain a certificate in geographic information systems to work eventually in the petroleum industry in northern Iraq. Petitioner continued his courses at Middle Tennessee State University and earned a

[*8] bachelor's degree in geoscience in December 2012. Petitioner then earned a certificate in geographic information systems from the University of Wisconsin-Madison in May 2014. After earning the certificate petitioner chose not to pursue employment in Iraq because of new dangers in areas of northern Iraq that he had previously considered safe. Petitioner did not return to Iraq after April 20, 2011.

V.    Petitioner's Federal Income Tax Returns

Petitioner claimed the FEIE for the years in issue on the advice of a certified public accountant (CPA) who had experience working with clients with foreign earned income. Petitioner's CPA concluded that he qualified for the FEIE and calculated the amount for each year.

Petitioner earned $140,782 in wages from Triple Canopy in 2010, from which Triple Canopy withheld $27,452 in U.S. Federal taxes.[3] Triple Canopy deposited petitioner's wages into his U.S. bank account. Petitioner reported his Triple Canopy wages on his 2010 Form 1040, U.S. Individual Income Tax Return, and claimed an FEIE of $91,500. He attached Form 2555, Foreign Earned Income. On his 2010 Form 2555 petitioner reported that his residence in Iraq

---

[3]Petitioner understood that he could have opted not to have taxes withheld by filing with Triple Canopy Form 673, Statement for Claiming Exemption From Withholding on Foreign Earned Income Eligible for the Exclusion(s) Provided by Section 911, but he chose not to exercise that option.

**[*9]** began on May 15, 2009, and continued through the date of filing. Petitioner earned $63,208 in wages from Triple Canopy in 2011 from which Triple Canopy withheld $12,098 in U.S. Federal taxes. Petitioner reported his Triple Canopy wages on his 2011 Form 1040 and claimed a prorated FEIE of $28,520. On his 2011 Form 2555-EZ, Foreign Earned Income Exclusion, petitioner reported that his residence in Iraq began on May 15, 2009, and ended on April 22, 2011, when he returned to the United States.[4] Petitioner paid no income tax to Iraq.

OPINION

As a general rule the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a) shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if the taxpayer meets certain preliminary conditions. See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

---

[4]For ease of discussion the Court will refer to the period from May 15, 2009, through April 22, 2011, as the period in issue. Only tax years 2010 and 2011 are in issue in this case.

**[\*10]** I.     FEIE

Section 61(a) provides that gross income includes "all income from whatever source derived". Citizens of the United States generally are taxed on income earned outside the United States unless a specific exemption applies. Specking v. Commissioner, 117 T.C. 95, 101-102 (2001), aff'd sub nom. Haessly v. Commissioner, 68 F. App'x 44 (9th Cir. 2003), and aff'd sub nom. Umbach v. Commissioner, 357 F.3d 1108 (10th Cir. 2003). Exclusions from gross income are construed narrowly, and a taxpayer must clearly establish his entitlement to any such exclusion. Id. at 101.

Section 911(a) provides that a qualified individual may elect to exclude from gross income, subject to limitations set forth in section 911(b)(2), his foreign earned income. Section 911(d)(1) defines "qualified individual" as follows:

> (1) Qualified individual.--The term "qualified individual" means an individual whose tax home is in a foreign country and who is--

> (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or

> (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is

**[*11]**       present in a foreign country or countries during at least
330 full days in such period.

Petitioner concedes that he does not satisfy the physical presence test under section 911(d)(1)(B) for the years in issue. Therefore, petitioner must prove that for each of the years in issue: (1) his tax home was in Iraq and (2) he was a bona fide resident of Iraq. See sec. 911(d)(1); see also Dawson v. Commissioner, 59 T.C. 264, 270-271 (1972).

II.    Bona Fide Resident Status

The Court first addresses petitioner's status as a bona fide resident of Iraq. To qualify for the FEIE under section 911 a taxpayer must offer "strong proof" of bona fide residence in a foreign country to disprove the Commissioner's determination to the contrary. Schoneberger v. Commissioner, 74 T.C. 1016, 1023-1024 (1980). An individual's status as a bona fide resident of a foreign country depends on the facts and circumstances of the case. The U.S. Court of Appeals for the Seventh Circuit, to which this case is appealable absent an agreement between the parties, Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), has identified the following 11 factors as relevant to an analysis of bona fide residency:

[*12] (1) intention of the taxpayer;

(2) establishment of his home temporarily in the foreign country for an indefinite period;

(3) participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment;

(4) physical presence in the foreign country consistent with his employment;

(5) nature, extent and reasons for temporary absences from his temporary foreign home;

(6) assumption of economic burdens and payment of taxes to the foreign country;

(7) status of resident contrasted to that of transient or sojourner;

(8) treatment accorded his income tax status by his employer;

(9) marital status and residence of his family;

(10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time;

(11) good faith in making his trip abroad; whether for purpose of tax evasion[,]

Sochurek v. Commissioner, 300 F.2d 34, 38 (7th Cir. 1962), rev'g and remanding 36 T.C. 131 (1961). While not all of the enumerated factors are present in every situation, those appropriate should be properly considered and weighed. Id.

1.    Intention. The Court finds sincere petitioner's testimony that he intended to remain and work in Iraq. The Court also looks to objective indicia of petitioner's intent to establish a residence in Iraq. See Jones v. Commissioner, 927 F.2d 849, 854 (5th Cir. 1991) (finding the taxpayer demonstrated intent to establish his residence in a foreign country by declining money given to Alaska

[*13] residents), rev'g and remanding T.C. Memo. 1989-616; Acone v. Commissioner, T.C. Memo. 2017-162, at *16; Cobb v. Commissioner, T.C. Memo. 1991-376, 1991 Tax Ct. Memo LEXIS 420, at *16 (finding the taxpayer demonstrated intent by accepting a "permanent transfer" to his claimed foreign home). Petitioner demonstrated his intent to establish residence in Iraq by choosing to pursue employment opportunities there on multiple occasions. He developed a fondness for the Iraqi people he met during his second military tour of duty and applied to work as a civilian for Cochise in Iraq. He later applied for a position with Triple Canopy with the expectation that he would work in Iraq. Once petitioner left his employment with Triple Canopy, he pursued an educational path that he hoped would gain him entry into the oil industry in Iraq. The Court finds that this factor favors petitioner.

2. Establishment of Home for an Indefinite Period. Petitioner argues that because of the need for security workers during the period in issue, there was an expectation that assignments would continue indefinitely. This Court has previously found that a taxpayer may qualify for the FEIE if there is an expectation that his or her contract will be extended. See, e.g., Linde v. Commissioner, T.C. Memo. 2017-180, at *23; Eram v. Commissioner, T.C. Memo. 2014-60, at *20-*21. Each of petitioner's contracts with Triple Canopy

**[*14]** was for a period "not less than 12 months", suggesting that his employment would continue indefinitely. The nature of petitioner's work and his employer's housing requirements eliminated the need for him to secure his own housing. The Court finds that this factor favors petitioner.

　　3.　　Activities and Assimilation. While the Court finds sincere petitioner's testimony that he was fond of the Iraqi people, his activities and interactions with Iraqi people and culture during the period in issue were often tangential to his work. Even though petitioner visited various sites in Iraq, the visits were primarily part of reconnaissance missions for his job. His meals with Iraqi police, purchases from Iraqi vendors within the Green Zone, and attempts to keep in touch with his interpreter friend do not establish assimilation into the Iraqi culture. Furthermore, petitioner was a "limited speaker" of Arabic and explained that he knew certain "command" phrases. The phrases related more to the nature of petitioner's work than to his social activities. However, the Court also recognizes that petitioner had little time or opportunity for social activities. Accordingly, the Court finds that this factor is slightly adverse to petitioner.

　　4.　　Physical Presence. During his employment with Triple Canopy petitioner physically spent more days in Iraq than in the United States. See supra p. 5 and note 2. The Court finds that this factor favors petitioner.

**[*15]** 5.    Temporary Absences.  The "nature, extent, and reasons" for petitioner's temporary absences from Iraq weigh moderately in his favor.  The "nature" of petitioner's absences was personal and recreational.  He stayed with his friend on each return to the United States and deliberately chose Brentwood, Tennessee, as his home of record for its proximity to Nashville, Tennessee, and his school.  However, as discussed above, the "extent" of his absences will not weigh strongly against him because he spent most of his time during the period in issue in Iraq.  Moreover, the "reasons" for his absences were that petitioner's employer and the U.S. Department of State required him to leave Iraq during his off-duty periods.  Absent that requirement, petitioner would have remained in Iraq.

6.    Economic Burdens and Taxes.  Petitioner did not incur additional expenses in Iraq because his living quarters and meals while on duty were provided at no cost to him.  Petitioner did not pay income tax to Iraq.  The Court finds that this factor is adverse to petitioner.

7.    Status of Resident vs. Transient or Sojourner.  The record does not establish petitioner's legal status under Iraqi law.  He had a visa that permitted him to be employed in Iraq, but there is nothing in the record to indicate he was considered a resident of Iraq under Iraqi law.  Petitioner, however, was sufficiently

**[\*16]** present in Iraq such that he was more than a transient. Accordingly, the Court finds this factor to be neutral.

8. <u>Employer's Tax Treatment</u>. Triple Canopy withheld U.S. Federal taxes from petitioner's wages, but petitioner could have opted not to have taxes withheld. This Court previously has found this factor adverse to the taxpayer if the employer specifically treated the taxpayer as a nonresident of the foreign country. <u>See</u> <u>Acone v. Commissioner</u>, at \*19. The Court finds that this factor is neutral in this case.

9. <u>Marriage and Family</u>. Petitioner did not have a spouse or children during the years in issue. Petitioner's parents were in the United States, and on each of his returns to the United States, petitioner stayed with his friend in Tennessee. The Court finds that this factor is slightly adverse to petitioner.

10. <u>Nature and Duration of Employment</u>. Petitioner worked 6 days per week for at least 12 hours per day performing serious and dangerous work under his contract with Triple Canopy. The Court finds that this factor weighs in favor of petitioner.

11. <u>Good Faith vs. Tax Evasion</u>. Petitioner acted in good faith in taking the job with Triple Canopy and working out of Iraq. The Court finds no bad faith or tax evasion motive. Petitioner timely and accurately reported his income on his

[*17] 2010 and 2011 Forms 1040 and sought the advice of a CPA with experience dealing with foreign earned income.  Accordingly, this factor weighs in favor of petitioner.

The majority of the Sochurek factors weigh in favor of petitioner and establish the "strong proof" necessary for a finding of bona fide residency. Therefore, the Court finds that petitioner was a bona fide resident of Iraq during the period in issue.

## III.    Foreign Tax Home

Section 911(d)(3) defines "tax home" as an individual's home for purposes of section 162(a)(2), which is generally "the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located." Mitchell v. Commissioner, 74 T.C. 578, 581 (1980).

An individual, however, shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. Sec. 911(d)(3); see also Harrington v. Commissioner, 93 T.C. 297, 307 (1989). Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States.  Sec. 1.911-2(b), Income Tax Regs.  Moreover, "[m]aintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and

**[*18]** dependents, does not necessarily mean that the individual's abode is in the United States." Id. Neither section 911 nor the regulations thereunder define "abode". This Court has previously stated:

> "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Fn. ref. omitted.]

Bujol v. Commissioner, T.C. Memo. 1987-230, 1987 Tax Ct. Memo LEXIS 234, at *7-*9, aff'd without published opinion, 842 F.2d 328 (5th Cir. 1988).

In other section 911 cases this Court has contrasted a taxpayer's familial, economic, and personal ties to the United States with the taxpayer's ties to the claimed foreign tax home.[5] Generally, if a taxpayer's ties to the United States

---

[5]Respondent argues that petitioner is not entitled to the FEIE because he did not incur any living expenses in Iraq. In Jones v. Commissioner, 927 F.2d 849, 857 (5th Cir. 1991), rev'g and remanding T.C. Memo. 1989-616, U.S. Court of Appeals for the Fifth Circuit found that a taxpayer who incurred additional living expenses and paid additional taxes while working abroad did not have an abode within the United States. In doing so the Court of Appeals distinguished Bujol v. Commissioner, T.C. Memo. 1987-230, aff'd without published opinion, 842 F.2d 328 (5th Cir. 1988), and Lemay v. Commissioner, T.C. Memo. 1987-256, aff'd, 837 F.2d 681 (5th Cir. 1988)--cases in which the taxpayers incurred no additional living expenses while working abroad--and noted that the taxpayers in those cases were "essentially commuting on a regular basis from their homes in the United States." Jones v. Commissioner, 927 F.2d at 857. This Court has not held that

(continued...)

[*19] remained strong, this Court has held that the taxpayer's abode remained in the United States even if the taxpayer had ties to the foreign country during a particular period.  See, e.g., Harrington v. Commissioner, 93 T.C. 297; Acone v. Commissioner, T.C. Memo. 2017-162; Evans v. Commissioner, T.C. Memo. 2015-12; Daly v. Commissioner, T.C. Memo. 2013-147.  Considerations include property ownership, community involvement, banking activity, recreational activities, the amount of time the taxpayer spent in each location, and the residence of the taxpayer's family.  See Harrington v. Commissioner, 93 T.C. at 309 (finding the taxpayer's abode remained in the United States where he spent almost half his time in the United States with his family, maintained bank accounts in the United States, attended church in the United States, and owned vehicles in the United States); Acone v. Commissioner, at *14 (finding the taxpayer's "domestic" home was in the United States because he overwhelmingly chose to spend his free time in the United States); Daly v. Commissioner, at *12 (finding the taxpayer's ties to his foreign claimed tax home "transitory" where he did not travel or bank there and where his family remained in the United States).

---

[5](...continued)
employer-paid living expenses create an absolute bar to claiming a foreign tax home.

[*20] Petitioner's principal place of employment during the years in issue was in Iraq. Therefore, his tax home was in Iraq unless his abode was within the United States. Petitioner did not have a spouse or children during the years in issue. Petitioner's parents lived in the United States, but petitioner did not live or stay with them. Instead, on each visit to the United States petitioner stayed with his friend in Tennessee. Petitioner co-owned property in the United States, but his parents, the other co-owners, managed the property while he was in Iraq. He had a valid driver's license and maintained a bank account in the United States, but his community and familial ties to the United States overall were not strong enough for the Court to find that his "abode" remained within the United States.

The Court considers petitioner's ties to Iraq in light of the unique circumstances of his work and the nature of the region. Petitioner worked 6 days per week for at least 12 hours per day. He had limited time for a social or personal life in Iraq. He attempted to open three bank accounts in Iraq but closed them after he was not able to withdraw cash. Even though he deliberately chose Brentwood, Tennessee, as his home of record, he was required to leave Iraq during his off-duty periods. Petitioner would have remained in Iraq had he been permitted to do so.

[*21]  This Court recently found in Linde v. Commissioner, at *13, that a taxpayer had stronger ties to Iraq than to the United States.  This Court found that the taxpayer's spending most of his time in Iraq with the intent to remain and work there outweighed the presence of his family in the United States and his ownership of a home in the United States.  Id. at *13-*14.  Like Mr. Linde, petitioner spent most of the period in issue in Iraq and intended to remain and work there.  As discussed above, the Court does not find that his familial ties and activities in the United States remained so strong as to enable the Court to find that his abode was in the United States.  Accordingly, petitioner's tax home was in Iraq during the years in issue.  Because petitioner has shown that his tax home was in Iraq and that he was a bona fide resident of Iraq, he was a "qualified individual" for purposes of the FEIE and entitled to claim the FEIE for each of 2010 and 2011.

IV.    Section 6662(a) Penalty

Because petitioner was entitled to claim the FEIE for 2010 and for 2011, petitioner is not liable for a section 6662(a) penalty for either 2010 or 2011.[6]

---

[6]With respect to an individual taxpayer's liability for a penalty, the Commissioner must produce sufficient evidence indicating that the imposition of a penalty is appropriate.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  The Commissioner's burden of production includes evidence that the penalties were "personally approved (in writing) by the immediate supervisor of the individual making such determination".  Sec. 6751(b)(1); see Chai v.

(continued...)

[*22] On January 22, 2018, respondent filed a motion to reopen the record to admit into evidence the declaration of John Hawley and civil penalty approval forms for the years in issue. Reopening the record for the submission of additional evidence lies within the Court's discretion. Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 363 (9th Cir. 1974), aff'g T.C. Memo. 1971-200; Butler v. Commissioner, 114 T.C. 276, 286-287 (2000). The Court will deny a motion to reopen the record where the evidence relied on is cumulative or would not change some aspect of the outcome of the case. Dynamo Holdings Ltd. P'ship v. Commissioner, 150 T.C. ___, ___ (slip op. at 11) (May 7, 2018); Butler v. Commissioner, 114 T.C. at 287. Because the Court finds petitioner is not liable for a section 6662(a) penalty for either of the years in issue, the Court will deny respondent's motion to reopen the record because the evidence relied on will not change the outcome of this case.

---

6(...continued)
Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; Graev v. Commissioner, 149 T.C. ___, ___ (slip op. at 14) (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). Because the Court finds that petitioner is not liable for a sec. 6662(a) penalty, the Court does not address whether respondent met his burden of production.

**[*23]** The Court has considered all arguments made by the parties and, to the extent not mentioned above, the Court concludes they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An order will be issued denying respondent's motion to reopen the record, and decision will be entered for petitioner</u>.